## GIBSON v. UTAH STATE TEACHERS' RETIREMENT BOARD et al.

No. 6220.   Decided September 13, 1940.   (105 P. 2d 353.)

For opinion on rehearing see 99 Utah 592, 110 Pac. 2d. 365.

*J. Lambert Gibson,* of Salt Lake City, and *Marl D. Gibson,* of Price, for plaintiff.

*Joseph Chez,* Atty. Gen., *Grover A. Giles,* Asst. Atty. Gen., and *William A. Hilton,* of Salt Lake City, for defendant.

LARSON, Justice.

This cause involves the interpretation of subdivision (b) of Sec. 12 of Chap. 85, Laws of Utah 1937, known as the Teachers' Retirement Act, and is before us on an application for a Writ of Mandate. Plaintiff, a teacher at the University of Utah since 1904 sought membership in Teachers' Retirement System. Defendants, as the Teachers' Retirement Board, refused to admit or recognize plaintiff as entitled to membership in the system and he applied for a mandate directing the Board to admit him to, or recognize him as entitled to, membership in the system. Plaintiff has been a teacher in the public schools of the State of Utah for over 35 years. In 1923, through the University of Utah where he was teaching, he became the holder of a retirement annuity contract with the Teachers' Insurance and Annuity Association of America, commonly spoken of as the Carnegie Retirement System. Plaintiff and the University of Utah each contributed one half of the monthly premiums until December, 1937 when at the request of plaintiff the payment of premiums ceased. Based upon the payments which had been made there has accrued a non-assignable deferred annuity, payable as a paid up contract for a lesser amount when the holder shall retire. When the Retirement Board rejected plaintiff's application for membership, he commenced in the District Court an action under the Declaratory Judgment Act, Title 104, Chapter 64, R. S. U. 1933, for a determination of his rights and status under the Teachers' Retirement Act. The District Court in due time entered an order dismissing plaintiff's action.

These proceedings were then instituted in this court.

The Act under consideration provides in Sec. 11 that all teachers employed in the public schools of the state on or after July 1, 1937, *and not excluded by Sec. 12,* become members of the Retirement System. We quote subdivision (b), Sec. 12, in haec verba:

"Section 12. Teachers Excluded From Membership.
"The following teachers shall be excluded from membership in the retirement system:

\*      \*      \*

" (b) Every teacher who is the holder of a retirement annuity contract with the teachers' insurance and annuity association of America or with any other private organization or company, in which the state of Utah, or any subdivision thereof contributes part of the premium, under said contract; provided, however, that every such teacher, upon ceasing to be a holder of such contract and being otherwise eligible to membership in this system, shall forthwith become a member of the system."

Plaintiff contends that having had the University cease payments under his annuity contract in December, 1937, he, as a teacher employed in the public schools of the state, automatically became a member of the State Teachers' Retirement System December 29, 1938. The defendant, Retirement Board, urges three defenses:

(a)    That the decision of the District Court in the suit under the Declaratory Judgment Law is res adjudicata and therefore this action will not lie.

(b)    That by the terms of the Act the decision of the Retirement Board on questions of eligibility and membership is final, conclusive and not reviewable; and since its determination of eligibility was against plaintiff such decision is final, conclusive and controlling.

(c)    That since plaintiff cannot divest himself of his deferred annuity contract he is holder of an annuity contract with the Teachers' Insurance and Annuity Association

of America and so is ineligible for membership in the association.

Since it is conceded that plaintiff is, and since 1904 has been, a teacher in the public schools of Utah, as that term is defined by the Act, he is entitled to his writ unless he fails for one of the three reasons urged by defendants. We will therefore consider the question in connection with the defenses urged by the Retirement Board in the order given.

(a) The record reveals that the District Court did not make any finding or determination, or enter any judgment with respect to the status or rights of Plaintiff under the Teachers' Retirement Act. The action was dismissed, presumably on the ground of lack of jurisdiction since that was the only issue raised or heard there. Such action was, and is, not res adjudicata.

(b) Is the decision of the Retirement Board on questions of eligibility to membership final and conclusive, and not subject to any judicial review on questions of law or jurisdiction?

The Retirement Act does not create a voluntary association or one with a permissive membership. The teacher has no option as to whether he is a member or not, that is, he cannot of his own free will decline membership and refuse to pay in his contributions to the retirement fund. Such contributions are by express mandate of law deducted from his earnings by the school board and by it remitted to the State Treasurer for the credit of the fund. All teachers in the public schools of the state on or after July 1, 1937, are by the mandate of law members of the retirement system, except those excluded by Sec. 12, to-wit: Part-time or substitute teachers; exchange teachers from without the state; contributing members of a local system who do not comply with Sec. 13; and holders of annuity contracts with a private organization or company to which the State or a subdivision thereof is contributing part of the premium. The Retirement Board is vested with the duty of determining the facts

as to whether a person is in a status requisite to membership, and to determine all questions of fact pertaining to application for benefits on retirement. Sec. 8. But the facts having been determined by the Board, the question of membership in the system under such facts is a question of law. Here the Board having determined the facts—they are not in dispute—the question as to whether or not under those facts the plaintiff is or is not entitled to membership is a question of law, and subject to our review.

(c) We come now to the real crux of the case. Does the fact that plaintiff is the holder of a paid up, deferred annuity contract with the Teachers' Insurance and Annuity Association of America, of which he cannot divest himself, although neither the State nor any other public body or institution is contributing to the payment of premiums thereon, place plaintiff in a status of permanent ineligibility for membership in the retirement system? In other words what is the meaning of subdivision (b) of Sec. 12?

Subdivision (b) of Sec. 12, Chap. 85, Laws of Utah 1937, reads as follows:

"(b) Every teacher who is the holder of a retirement annuity contract with the teachers' insurance and annuity association of America or with any other private organization or company, in which the state of Utah, or any subdivision thereof contributes part of the premium, under said contract; provided, however, that every such teacher, upon ceasing to be a holder of such contract and being otherwise eligible to membership in this system, shall forthwith become a member of the system."

The argument resolves itself as to whether the expression "the State of Utah * * * *contributes* part of the premium" (italics added) is to be read as *"is contributing"* or as *"has contributed"* part of the premium. Plaintiff contends for the former construction and defendants contend for the latter one. If defendants are correct in their interpretation, any teacher who had ever while teaching in the State of Utah been the holder of such an annuity contract could never be-

come a member of the retirement system. This follows of necessity since under the terms of the contract the holder thereof can never divest himself of the paid up deferred annuity based upon the amount he had paid, except by retirement from teaching, and using it up as retirement benefits, which disqualifies him for membership in the state system.

We think plaintiff's construction and interpretation must prevail. In the first place, had the legislature intended otherwise it would have used the past tense, *"has contributed"* instead of the present tense *"contributes"* which is equivalent to *"is contributing."* In the second place, if defendants' construction is correct, the last part of the subdivision, the proviso, would be meaningless, for a teacher once a holder could never "cease to be a holder of such contract." The proviso can only mean that a teacher otherwise eligible for membership can "cease to be a holder of such contract" and thereby become a member of the state system. What kind of a contract? Why one to which the state * * * *contributes* part of the premium? One ceases to be the holder of a contract to which the state *contributes* when the state ceases to *contribute.* This construction is further evidenced by Sec. 21, dealing with "termination of membership—withdrawals and deposits," and providing that a member who discontinues a status requisite to membership, except by death or retirement, may withdraw from the fund his accumulated contributions. He may again become a member with his old standing and rating upon acquiring a teaching status for membership and redepositing in the fund the amount of his withdrawals. It then provides that for the purpose of Sec. 21 only, that is of terminating a membership which is in existence and allowing withdrawals of accumulated contributions, the holding of a contract with a private retirement pension company for which the State is contributing part of the premium shall be considered terminating the status of membership. It is evident the purpose of the provision is to prevent a teacher from having the State contribute to more than one pension at the same time. This is further made clear by the

provisions with respect to teachers holding membership in
local retirement systems.  Such teachers can only draw from
the state fund a pension or retirement benefit in proportion
to what his contributions to the state fund bear to what he
would have paid had he not belonged to the local system,
where a subdivision of the state pays into the local fund, but
such deduction shall only be made for the time such teacher
was a member of both systems.

Let us note further the legislative history of the Act.  As
first introduced in the legislature as House Bill 103, it pro-
vided for exclusion of teachers from membership in the state
system as long as they were "a contributing member of the
Carnegie Retirement System" or "a contributing member of
a local retirement system" such as the Salt Lake City Schools
maintained.  But the expression "a contributing member of
the Carnegie Retirement System," was a misnomer.  In
1905 Andrew Carnegie established a trust of $10,000,000 as
a "Foundation for the Advancement of Teaching", to be ad-
ministered for retirement allowances to teachers in uni-
versities, colleges and technical schools.  The system set up
in the administration of this trust became known as the
Carnegie Retirement System and was non-contributing. That
is, neither schools nor teachers contributed to the fund.  In
1918 the Foundation received from the Carnegie Corpora-
tion a further sum of $13,000,000 to be used in the termina-
tion of the old system and the inauguration of a contributing
system of pensions in which both the teachers and colleges
contribute.  To effectuate and carry on this new policy the
Foundation organized a corporation known as the "Teach-
ers' Insurance and Annuity Association of America", which
issues policies or certificates.  The corporation deals only
through the schools and does not issue certificates to teachers
except through the cooperation of the school which must
share in the payment of the premiums.  The teacher, ceasing
his connection with the school, cannot withdraw what he
has paid in but has a paid certificate for the amount accrued
which may be utilized upon meeting retirement conditions

and status. So a "holder of a contract with the Teachers' Insurance and Annuity Association of America in which the State of Utah pays part of the premium" is as near as such a thing could exist, "a contributing member of the Carnegie Retirement System". The former expression is merely the correct legal way of expressing the meaning covered by the latter phrase. When therefore the legislature, upon motion of Mr. Peterson, amended subdivision (b) of Sec. 12 of the Act by deleting the words "a *contributing* member of the Carnegie Retirement System so long as he shall be a *contributing* member of such system" and inserted in lieu thereof the words "the holder of a retirement annuity contract with the Teachers' Insurance and Annuity Association of America or any other private organization or company, in which the State of Utah or any subdivision thereof *contributes* part of the premium under said contract," (italics added), it is evident they did not change or intend to change the meaning but to express the same idea in language correctly describing the factual situation. House Journal 1937, pages 579, 580 and 581. Under the agreed facts, the plaintiff, being a teacher in the public schools of the State of Utah, in a status otherwise requisite for membership, and having prior to December 31, 1937, had the University of Utah cease premium payments on any contracts with the Teachers' Insurance and Annuity Association of America, the plaintiff automatically as a matter of law on the record before us, became a member of the Teachers' Retirement System, and upon payment of all accumulated dues or contributions is entitled to recognition and standing as such member.

Let the writ of mandate issue accordingly.

PRATT, J., concurs.

MOFFAT, C. J., concurs in the result.

WOLFE, justice (dissenting).

I concur in the conclusions (1) that the decision of the district court under the Declaratory Judgment Law is not

res adjudicata, and (2) that the decision of the Retirement
Board as to who is eligible for membership is not final where
a question of law interpretation is involved.  It is
not now necessary to determine whether the Board's ██
decisions would be final if they concerned only those
*who had become members,* under the theory that where the
State confers benefits out of its own property it may de-
termine the nature of the hearing and review in contro-
versies over the disposition of that bounty.  See Article by
Ray A. Brown, 19 Minn. Law Review 261, reprinted in part
at page 384 et seq., Vol. 4 Selected Essays on Constitutional
Law, Subsection 3 entitled "Matters of Privilege".

I regret that I cannot concur in the conclusion that the
holder of a deferred annuity contract with the Teachers' In-
surance and Annuity Association of America, hereinafter
called the Association, is entitled to become a member of the
Retirement Fund, hereinafter called the Fund.  My regret
is based on the fact that , under my view, those of the older
teachers in the University of Utah and Agricultural College
who did not join the Association may now be in a better
position than those who did.  But these inequities are due to
the failure of the Legislature to take them into account.  We
cannot give to plain language a strained and unnatural mean-
ing, however ingenious, in order to achieve a supposedly de-
sired result.  The Legislature clearly intended that no per-
son should share in two systems to which the State contri-
buted.  Furthermore, if we are to interpret language to pre-
vent inequities (which is permissible and commendable in
cases where one construction is as valid as another, but such
is not the situation here), we must take in the whole picture.
While the view of the prevailing opinion does prevent certain
inequities it opens the door to the entrance of others.  While
it may be inequitable to deny those older teachers who have
gone into the Association the benefits of the prior credit pro-
visions of Sec. 27 of the Teachers' Retirement Act, it may be
equally unfair to give them the benefit of a paid up annuity
policy in the Association to which the State has contributed

and at the same time permit them to share in the bounty of the State-donated prior service pensions. No others in the whole teaching profession were given such a privilege. I think Sec. 12 (b) was intended to prevent those in our universities and colleges from obtaining such double advantage. And if we are to enter into the business of balancing advantages and equities in arriving at an interpretation of Sec. 12 (b) of Chap. 85, Laws of Utah 1937, hereafter called the Act, we should also note the effect of the view of the prevailing opinion on the whole prior service reserves donated by the State. I fear the ruling in the main opinion courts disaster for these reserves, or at least tends toward that result, as I shall hereafter endeavor to point out.

In order to discern the intention of the Legislature as revealed in Sec. 12 (b) of the Act, I pause a moment to consider Sec. 27 which grants, among other things, the prior service pension. A member upon retirement, under this Section receives: First, an annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement. This is value received for what is actually paid in. Secondly, he receives a *pension* equal to the annuity which his accumulated normal contributions would buy. This is a gratuity conferred by contributions of the State. Thirdly, he receives an additional pension, purchased by the contributions *of the State,* which shall be determined by the following formula: Divide his final compensation before retirement, not exceeding $2,500, by 70 and multiply it by the years of prior service credited to him, which must be at least 15 years. There are modifications not material to the illustrations which follow. Under Sec. 27, Subsection 3, therefore, a person who has served 15 years in the school system whose final compensation is $2,500 or more (and few indeed there would be in the universities who would not after 15 years be receiving that amount) would receive upon retirement about $535 pension annually besides the annuity and pension under Subsections 2 and 3 of Sec. 27. If he served 20 years he would receive $714 per per year besides the other pension and annuity. And, if he is a mem-

ber of the Fund, he obtains this pension when he retires from the teaching service provided he has served at least 15 years and is 60 years of age or has served 30 years and is 55 years of age, regardless of whether he has or has not contributed to the Fund.

The prior service pension is a pure gratuity given by the State. It may very well be that the Legislature had before it the number of men connected with the University of Utah and the Agricultural College who *had* contracts with the Association and had data in respect to each of such contract holders. As to such persons it would know that the State had contributed dollar for dollar to the Association with the contract holder. The Legislature may have felt that if the State kept on paying into that Association on behalf of the members of the Association (who had to be members of a college, university or technical school) that such members, so long as the State was willing to match their dollars, should be required to adhere to their contracts and not be permitted to quit paying to the Association and hold a paidup deferred annuity contract in that Association for which the State had paid half, and yet come into the Teachers' Retirement Fund, then retire and obtain a prior service pension again paid for by the State. The Legislature might have permitted the member of the Association to discontinue payment into the Association and come into the Retirement Fund on condition that his pension under Sec. 27, Subsection 3, be reduced by the amount of the annuity which he would receive from the Association. But it did not see fit to do that. It evidently concluded to require those who were in the Association or those who held a contract in any private organization or company toward which the State or its subdivision had contributed, to rely upon that contract for retirement provisions. Membership in local mutual funds set up by teachers' organizations or subdivisions does not prevent a teacher from becoming a member of the Retirement Fund (Section 13) but the prior service pension is cut down in proportion as the payments in the Fund are cut down because of the payments made into the local fund.

We can take a glance at what may happen to this Fund under the holding of the main opinion, a result which I think Sec. 12 (b) was designed to prevent. Unfortunately this application for mandamus is an original proceeding. We, therefore, do not have a record which would reveal the actual facts about the membership of faculty members of the University of Utah and Agricultural College to aid us in discovering a basis for passage of Sec. 12 (b). We must rest on surmises as presenting reasons for its passage. Supposedly a number of the teachers in the University of Utah and/or the Agricultural College are holders of contracts in the Association. Others are, in all probability, members of the Fund. Since one must have taught eight years before he can become a member of the Association the probability is that many of the older teachers are members of the Association whilst the younger teachers, who did not have long enough tenure, belong to the Fund. By the same token those who belong to the Association are those whose tenure has approached the 15 year limit and a number of them may be near the age of sixty or over, ready or nearly ready to retire. Some, like the plaintiff, have been in "public schools of this state" for more than thirty years. Naturally, we will expect each person to do what is most to his benefit. Under the prevailing opinion, we may expect a general exodus of the older teachers in our universities who have membership in the Association, from that Association to the Retirement Fund. Why should they not? They retain the deferred paid-up annuity contract to which the State has contributed. If the Retirement Board must accept their membership, these older teachers, ready to retire, may after they become members, retire and obtain the proir service pension. Those ready to retire in a few years may pay in a few premiums for which they get the benefits under Sec. 27, Subsections (1) and (2) and in addition share in the prior service gratuity under subsection (3). Take the case of the plaintiff. He has been at the University of Utah for 36 years. He holds a deferred annuity contract from the Association which his

contributions plus those made by the State from 1923 to 1937 have purchased. He may obtain another annuity under Sec. 27, Subsection (1), which will be the actuarial equivalent of the accumulated contributions he makes into the Fund from 1937 until he retires. He may obtain under Sec. 27, Subsection (2), a pension equal to the annuity which his normal contributions will purchase and, if he retires immediately, he will obtain a yearly pension for prior service entirely paid for by the State amounting to $1,285.20. If he lives fifteen more years, the State will pay him for prior service $19,275. If there should be in the Universities twenty men who may be able to retire within the next five years with an average service of 20 years the State would pay out each year $14,280.00, and if they lived an average of 20 years after retirement the total amount which the State must pay out of these pensions would be $285,600. These illustrations may understate or overstate the real situation but they give the reader some idea of what the Legislature sought to avoid. It is generally known among informed persons, even if not judically known, that the State has not been able to contribute the amount required by the Act to make up the reserve for prior service pensions for the members already in the Fund who will be entitled to prior service benefits. It will require millions for this reserve. During the last Session the Legislature appropriated nothing toward the prior service reserve if the appropriation be first put to future service and disability reserve. Certainly, the Court's decision adds to the burden of the State. In my opinion the Legislature expressly sought to avoid such result.

What I have said above furnishes the groundwork for the argument that the Legislature intended to accomplish exactly what a correct and natural interpretation of Sec. 12 (b) actually does accomplish. The Section is easy to analyze. It reads:

"(b) Every teacher who is the holder of a retirement annuity contract with the teachers' insurance and annuity association of America or with any other private organization or company, in which the state of Utah, or any subdivision thereof contributes part of the premium,

under said contract; provided, however, that every such teacher, upon ceasing to be a holder of such contract and being otherwise eligible to membership in this system, shall forthwith become a member of the system."

The teachers excluded from membership are (1) those who hold a retirement annuity contract with the Teachers' Insurance and Annuity Association of America, (2) those who hold a retirement annuity contract "with any other private organization or company" to which "the state of Utah, or any subdivision thereof contributes part of the premium." This latter quoted phrase is part of the definition of the private organization or company. Not any private organization or company in which the teacher holds a retirement annuity (he may hold a contract in a purely private company on which he alone pays the premium) but a company to which the State or a subdivision contributes part of the premium. This latter clause goes only to private organizations other than the Teachers' Insurance and Annuity Association of America . There was no need to make the clause limit such organization because, as says the opinion, ever since 1918 the system of pensions it sponsored were contributory and our State was contributing to match the contributions of the University Teachers. Hence, we really need not consider the meaning of the phrase "in which the State of Utah or any subdivision thereof" because it does not pertain to the Association. But if the clause were so read as to modify both the Association as well as "other private organizations or companies" I think the phrase "contributes part of the premium" need not give us the difficulty which the parties seem to see in it. As before stated, if seen as describing or qualifying the type of company in which the teacher must have a contract in order to be excluded from membership in the Retirement Fund, we have no question of whether "contributes" should be read to mean "is contributing" or "has contributed". If the company or organization is one to which the State contributes part of the premium of those teachers who carry contracts with it, it marks the com-

pany as one in which a holder of a contract toward which the State has contributed is excluded from becoming a member of the Retirement Fund unless he ceases to be a holder of such contract. It is not necessary to discuss whether he can cease to be a holder of such contract. Perhaps he cannot cease to be a holder. Perhaps it is fastened on him because it is not transferable, but by some event unforseen by the Legislature he might cease to be a holder. The Association might modify its rules so as to permit assignment to the Retirement Fund in which case if he surrendered his annuity which was in part State purchased, he should be allowed membership in the Fund. But if he cannot cease to be a holder, he must suffer the consequences of that situation because the Legislature said so. This court, cannot, by construction relieve him of the consequence of exclusion.

The Legislative history as recited in the prevailing opinion, appears to support my view rather than that contained in the prevailing opinion. The language which was deleted read "a contributing member of the Carnegie Retirement System so long as he shall be a contributing member of such system." This meant that only so long as the member contributed to the Carnegie System was he excluded from the Retirement Fund. When he ceased contributing to that system he was eligible for the State Retirement Fund. But the amendment which was substituted involved a new idea with different consequences. It excluded the holder of a contract in the Association so long as he *held* a *contract* therein and not only so long as he *contributed* to that Association. To say that such language was to correct a misnomer seems to me to go far afield and to lose sight of the very important result that was sought to be accomplished as set out in the beginning of this opinion. Furthermore, where was the misnomer? The prevailing opinion states that before 1918 the Carnegie Retirement System was non-contributing; that after 1918 the schools or the teachers independently or through the schools were required to contribute. It must have been know by the Legislature that the State did not pay the whole premium of the teacher to the Association

but only half of it and therefore he was a contributing member of the Association although he may have contributed through the University by deduction from his salary and transmittal by it. I can see no misnomer. At least the language is sufficiently accurate to prevent us from ascribing to the Legislature the motive merely of correcting inaccurate language when what it did appears to be something designed to effect a very substantial change.

This case is of more than ordinary importance because of its probable consequences which, in addition to those above mentioned, may be the following: The prevailing opinion not only permits a university teacher to forsake the Association for the Fund, thus visiting upon the prior service reserves an unanticipated burden, but may put these same teachers in an advantaged legal position from which the State cannot, in good conscience, extricate itself. The court's opinion makes the Act operate as an offer to University teachers who are members of the Association to drop that membership and come into the Fund. If later on the State finds it impossible to keep up its payments, these teachers, having accepted the offer and changed their position, may be in a situation to assert a contract with the State which it should not impair and thus may claim first call on the prior service reserves to the detriment of others who also claim rights but who have not changed their positions. The effect of the State's withdrawing its bounty (Sec. 27, Subsection (3) from those who have not changed their position by coming into the Fund and who still obtain *everything they have paid for* and more under Sec. 27, Subsection (1) and (2), and those who have changed their position, may be quite different. Vested interests under a contract may come into being which may cost the State thousands of dollars which it not only did not contemplate paying but actually sought to prevent and which, according to my view, the Legislature did prevent by the language of Sec. 12 (b).

McDONOUGH, Justice (dissenting).

I concur in the views expressed by Mr. Justice WOLFE in his dissenting opinion.