**F I L E D**

PUBLISH

**December 19, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JULIAN HATCH, doing business as
Freedom From Religion; LYNNE
MITCHELL, doing business as Match,

Plaintiffs-Appellants,

v.

No. 04-4124

BOULDER TOWN COUNCIL;
BOULDER PLANNING
COMMISSION,

Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF UTAH
(D.C. No. 2:01-cv-71-PGC)**

---

Submitted on the briefs:[*]

Budge W. Call, Salt Lake City, Utah, for Plaintiffs-Appellants.

Craig T. Wentz of Christensen & Jensen, P.C., Salt Lake City, Utah, for
Defendants-Appellees.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

Before **TYMKOVICH**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

_____

**TYMKOVICH,** Circuit Judge.

_____

Plaintiffs Julian Dean Hatch and Lynn Mitchell are residents of and property owners in the town of Boulder, Utah. They filed this civil rights complaint against defendants in January 2001, alleging a plethora of constitutional violations concerning zoning, permitting and road maintenance issues. The district court concluded that most of plaintiffs' claims were barred by res judicata (claim preclusion) based on prior suits filed in the federal district and Utah state courts. The court further concluded that plaintiffs' remaining claims should be dismissed for various other reasons, including lack of ripeness, conclusory allegations, and failure to state a claim under 42 U.S.C. § 1983. Plaintiffs now appeal from the court's order denying their motion for summary judgment and granting the defendants' cross motion for summary judgment.[1]

Faced with a thirty-eight page, verified first amended complaint containing sixty-nine separate paragraphs of factual allegations, the district court attempted to unravel the knot by essentially dividing plaintiffs' lengthy factual allegations into two pieces. First, it determined that the doctrine of claim preclusion barred

_____

[1] Plaintiffs filed a Rule 59 motion after judgment, which the district court denied. Their notice of appeal does not purport to appeal from the denial of their Rule 59 motion.

-2-

all of plaintiffs' claims that were based on facts that arose *prior to final judgment* in the former actions. Second, it determined that the remaining claims, which arose *after final judgment* in the prior actions, could be resolved on the merits. Unfortunately, this method of applying claim preclusion created certain problems we cannot resolve on appeal. We must therefore reverse the disposition of some of plaintiffs' claims, and remand them for further consideration.[2]

Our four-part analysis begins by describing the issues litigated in the two prior actions. We then set out the applicable Utah and federal law of claim preclusion. Next, we apply that law to the claims asserted in plaintiffs' current complaint. Finally, we review the district court's analysis of the claims it found were not precluded by the prior actions.

## I. Issues litigated in prior actions

### A. September 26, 1996 § 1983 Suit

In 1996, Hatch filed a 42 U.S.C. § 1983 civil rights suit in Utah federal district court against Boulder, its mayor, town clerk, and members of its town council. His complaint charged, among other things, that in June 1995, Boulder

---

[2] As an alternative ground for affirmance of the district court's decision, defendants argue that plaintiffs' claims, arising prior to final judgment, were *actually* litigated in the previous actions and hence are now barred either by claim preclusion or by issue preclusion. The record, however, is insufficient for us to determine whether plaintiffs' current claims were actually litigated, to the extent necessary to result in preclusion. Defendants are of course free to re-assert this argument on remand, with appropriate support.

enacted a business license ordinance without complying with Utah's Open and Public Meetings Act, and that his business, "Freedom from Religion" (FFR), which had been engaged in selling beer prior to the enactment of this ordinance, should have been allowed to continue selling food and beer.

Hatch further alleged that the Town Council passed a second ordinance restricting the sale of alcoholic beverages that limited to two the number of new class A liquor licenses that could be issued. Hatch contended that the Town Council failed to comply with the Open and Public Meetings Act when it passed this ordinance. He also contended that on July 31, 1995, the Town Clerk approved beer license applications on behalf of other businesses, but not FFR.

On August 10, 1995, the Town Council met and imposed a requirement on FFR that it obtain approval from the Department of Agriculture and the Health Department before selling food from its premises. Hatch contended that this requirement was essentially a pretext to run him out of business. Eventually, on September 22, 1995, the Council issued FFR a business license, authorizing it to conduct "Retail sales of food and camping supplies." Aplee. Supp. App., Vol. I at S-199. Hatch contended that the unjustified delay in issuing him a business license, and the limited nature of the license ultimately issued, deprived FFR of "its constitutionally protected property right to maintain its business, which includes the right to sell beer." *Id*. at S-200.

Apparently, Hatch later added a claim that Boulder violated his due process rights by interfering with his business sign.[3] Hatch's claims proceeded to jury trial.[4] On April 14, 1999, a jury entered a special verdict, finding that the Town had failed to give Hatch due process in connection with his retail business, his camping business, and his business of selling beer. It rejected his claim, however, that the Town had violated due process in connection with the maintenance of his sign. The jury awarded Hatch a total of $86,000 in actual damages for these alleged violations. It does not appear that either party appealed from this verdict.

**B. July 12, 1999 Petition for Review**

Hatch and Mitchell were petitioners in a "Petition for Review of Decision on Conditional Use Permits and Request for Injunctive Relief," filed in Utah state court against Boulder and its Town Planning Commission in 1999. They requested judicial review of the conditional use permits the Boulder Town Planning Commission granted on February 10, 1999, to their neighbors and adjacent land owners, Sam Stout and Rhea Thompson, for their construction business. They complained that the permits had been granted in an arbitrary,

---

[3]     The record does not contain a copy of this amendment.

[4]     In addition to a claim for "civil rights violation" pursuant to § 1983, Hatch included claims for "deprivation of property" and for "assault and battery" against Larry Davis, husband of the Town Clerk, who allegedly assaulted him during a Town Council meeting.

capricious, and illegal manner, including the Commission's failure to adopt an official map setting forth commercial districts and a plan for future development.

The state district court determined that Boulder's zoning ordinance was not arbitrary, capricious, or illegal, that the commercial designations in the ordinance were legal and not ambiguous, and that the Town had properly awarded the challenged conditional use permits. Hatch and Mitchell appealed to the Utah Court of Appeals, which reversed the district court on the validity of the zoning ordinance, finding that the Town had failed to present any evidence that a proper zoning map had accompanied the text of the zoning ordinance when it was presented to the public and to the Town Council for approval. *Hatch v. Boulder Town Council*, 21 P.3d 245, 248 (Utah Ct. App. 2001).[5] In light of this holding, it found plaintiffs' remaining claims moot. *Id.* at 249.

## II. Law of claim preclusion

### A. Claim-splitting principle

Before discussing the specific elements of Utah and federal law of claim preclusion, we narrow our focus to the key issue in this case. Although plaintiffs attack the district court's claim preclusion analysis on a number of points, we perceive the key issue to be whether plaintiffs' current complaint represents an impermissible attempt to split their claims. *Stone v. Dep't of Aviation*, 453 F.3d

---

[5] Plaintiffs incorrectly state in their brief that this decision was reached by the Utah Supreme Court.

1271, 1278 (10th Cir. 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common law rule of claim preclusion prohibiting the splitting of actions.").

The Restatement (Second) of Judgments § 24 (1982) enunciates the general rule concerning "claim splitting":

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant *with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.*
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

(emphasis added).

The question for us, then, is whether the facts that form the basis of plaintiffs' current claims (the 2002 amended complaint) are part of the same "transaction" they asserted in the previous actions. This question is determined by the manner in which the facts constituting the transaction are grouped. As will be demonstrated, the district court grouped all facts arising prior to the final judgments in the previous actions as a single transaction.

## B. Choice of preclusion law

In the case of a state court judgment, the state law where the judgment was entered (here, Utah) applies. *See* 28 U.S.C. § 1738 (full faith & credit statute); *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997) ("We must, therefore, ascertain what preclusive effect [Utah] would give its own decision before we may know what effect it should be given in the federal court.") (quotation omitted). In the case of the § 1983 suit, federal law of preclusion applies. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).

## C. Utah claim preclusion law

Under Utah law:

> In order for claim preclusion to bar a subsequent cause of action, a plaintiff must satisfy three requirements:
> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits . . . . All three elements must be present for claim preclusion to apply.

*Macris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219 (Utah 2000).

### 1. Same parties or their privies

It is uncontested that both plaintiffs were parties to the 1999 Utah action. This element of claim preclusion analysis is therefore satisfied.

## 2. Claims that could and should have been raised

Plaintiffs advance three reasons why their claims in this action either could not or should not have been raised in the earlier, state court action. First, the suits are not the same cause of action. Second, the action for judicial review they pursued in state court "does not provide for damages or the relief contemplated under § 1983; and does not provide for the other claims asserted, such as procedural due process and the right to a meaningful hearing under federal law." Aplt. Opening Br. at 41. Third, they were not obligated to raise claims that arose after the filing of their complaint in the earlier action.

Only plaintiffs' first and third arguments have merit and therefore limit the application of claim preclusion to their claims.

### a. Same cause of action

"[F]or the doctrine of res judicata to preclude a subsequent cause of action . . . the cause of action in the present suit must be identical to the one brought in the prior suit." *Macris*, 16 P.3d at 1221. "Identity" does not refer to an exact identity between the legal theory of the claims brought in the first and second actions; rather, the question is whether there is an "identity of facts and evidence between the two claims." *Id.* Here, the district court was mistaken in failing to recognize the *lack of identity* between the facts and evidence underlying some of the claims raised in the prior state court action and those raised in this

action, a factor that should have prevented the application of claim preclusion.[6]
On remand, therefore, the district court should carefully analyze this element as it
pertains to each of the claims we remand for further consideration.

### b. Availability of relief

Plaintiffs' second argument, once appropriately narrowed, is easily
resolved. It is essential to notice the scope of plaintiffs' argument on appeal.
They are *not* arguing that the limited nature of a proceeding for review of a
conditional use permit under Utah law did not permit them to raise unrelated
claims, such as their claims about hindrance of subdivision development, denial
of a beer license, being excluded from the city library, etc. They simply argue
that their *federal constitutional claims* pertaining to the conditional use permit
could not have been brought in a petition for review proceeding.

Although the statute under which plaintiffs sought judicial review,
Utah Code Ann. § 10-9-1001 (subsequently renumbered as Utah Code Ann.
§ 10-9a-801), does not expressly provide an opportunity to raise federal
constitutional claims, the Utah courts have considered and determined both state
and federal constitutional claims in actions for review of, or challenging,

---

[6]     Claims to which claim preclusion does not appear to apply for this reason
include plaintiffs' complaint about subdivision development (complaint, ¶ 10-12);
their complaint about conveyance of the adjacent cul-de-sac (complaint, ¶ 62);
plaintiff Mitchell's complaint about licensing issues (complaint, ¶ 12-14, 63); and
Mitchell's complaint about exclusion from the Town library (complaint, ¶ 42).

municipal land use decisions. *See, e.g., Anderson v. Provo City Corp.*, 108 P.3d 701, 707-09, 710 (Utah 2005) (addressing state equal protection and federal right-to-travel claims); *Patterson v. Am. Fork City*, 67 P.3d 466, 473-76 (Utah 2003) (considering federal equal protection and due process claims). Plaintiffs rely specifically on Utah Code Ann. § 10-9a-801(3)(a)(ii), which states that "the courts shall . . . determine *only* whether or not the decision, ordinance, or regulation is arbitrary, capricious, or illegal." (emphasis added). The district court reasoned that this language refers only to the standard of review, and does not limit the type of ancillary, constitutional matters that a court conducting a review of a municipal land use decision may consider. We agree.

### c. Filing date and claim-splitting

The district court found that plaintiffs could have and should have included in the Utah case all of their claims that arose from facts that occurred prior to the *resolution* of the Utah state court proceeding. *See* Aplt. App. at 450 (emphasis added) ("To the extent[] that a few of plaintiffs' federal § 1983 claims arise from alleged facts *occurring subsequent to the resolution of the state court action*, such claims are not precluded under the court's claim preclusion analysis."). This finding, however, does not follow from the applicable Utah law.

In *Macris*, 16 P.3d at 1219, the defendant argued that the plaintiff's claims were barred by claim preclusion because they had not been included in a prior action, and the plaintiff "knew of its claims against [defendant] *before the trial in*

-11-

*Macris I* began and should therefore have amended its complaint in that action and asserted the claims now pursued in the present action." *Id.* (emphasis in original). The Utah Supreme Court rejected this argument, holding instead that "a plaintiff need only include claims in a suit for res judicata purposes if the plaintiff was aware of the facts upon which the later claims were based *at the time the first suit was filed*." *Id.* at 1220 (emphasis added).

Plaintiffs filed their Utah state court action on July 12, 1999. Thus, any causes of action based on facts that occurred after that date need not have been included in the case for claim-preclusion purposes. This differs from the district court's conclusion, which would have barred any claims that arose prior to November 10, 1999, when the state court ruled in favor of plaintiffs on their claims. Although this is a difference of only four months, it is a difference required under Utah law.

### 3. Final judgment on the merits

Plaintiffs also contend that the prior state proceeding did not result in a final judgment on the merits of their claims. The Utah Court of Appeals, after ruling in plaintiffs' favor on the invalidity of Boulder's zoning ordinance, stated "[t]he ordinance's invalidity renders moot [plaintiffs'] other claims." *Hatch*, 21 P.3d at 249. Defendants argue that this is in fact a "judgment on the merits," as to the invalidity of the zoning ordinance claim. Plaintiffs argue, however, that since the prior judgment did not adjudicate their *other* claims on the merits

-12-

(it merely found them moot), the judgment cannot have a preclusive effect on the claims that the court found moot, or *any other claims* they might have raised.

Had the state court resolved plaintiffs' claims *entirely* on mootness grounds, there would be no final judgment from which claim preclusion could result, because Utah follows the general rule that a dismissal for lack of jurisdiction does not bar another action by the plaintiff on the same claim. *Snyder v. Murray City Corp.*, 73 P.3d 325, 332-33 (Utah 2003); *Gibson v. Utah State Teachers' Ret. Bd.*, 105 P.2d 353, 355 (Utah 1940). *See also* Restatement (Second) of Judgments § 20(1)(a). A final judgment that found *some* claims moot, however, and resolved at least one of them on the merits, is different. The final judgment here, on *one* of plaintiffs' claims, satisfied the requirement of a final judgment for claim-splitting rules. We believe the Utah courts would conclude that the judgment had a preclusive effect as to any claims that should have been brought, but were not.

### 4. Conclusion

The disposition of the prior state court action bars Hatch and Mitchell from bringing any claim involving identical facts or evidence that arose prior to the filing of their Utah state court action on July 12, 1999.

### D. Federal law of claim preclusion

If the judgment reached in the prior federal suit only barred claims that accrued prior to the filing of Hatch's September 1996 *complaint*, it would not

-13-

preclude any of plaintiffs' claims. Since the district court broadly determined that the judgment also barred any claims that could have been raised prior to the April 1999 *final judgment* in the prior suit, however, we discuss the relevant law, to permit the district court to apply the law more narrowly on remand.

Under federal law, the application of claim preclusion requires that three elements be satisfied: "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Yapp*, 186 F.3d at 1226. The district court correctly noted that the prior federal court judgment involved only Hatch and therefore did not preclude any claims by Mitchell in this case. The only meritorious argument that Hatch makes pertains to the third element: whether the cause of action sought to be precluded is identical with that raised in the prior action.

Hatch makes two arguments on this point. First, he argues that "[t]he actions alleged by Hatch in this case could not have been raised in Hatch I [the § 1983 suit], because they occurred after September 1996 when Hatch I was filed." Aplt. Opening Br. at 38. Second, he argues that the only "issues" actually presented in the first case were those involving Hatch's business license for beer sales and camping in 1995, and the destruction of his sign in 1995. In other words, Hatch asserts that the causes of action now advanced are not identical with

those that were litigated in the prior action, and that therefore claim preclusion should not apply.

### 1. Arising after September 1996 filing date

This circuit has adopted the transactional test contained in the Restatement (Second) of Judgments § 24. *Yapp*, 186 F.3d at 1227. "The transactional approach provides that a claim arising out of the same 'transaction, or series of connected transactions' as a previous suit, which concluded in a valid and final judgment, will be precluded." *Id.* "What constitutes the same transaction or series of transactions is 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting Restatement § 24).

Just as in the case of Utah state preclusion law, a question is presented under federal claim preclusion law about the cutoff date for Hatch's responsibility to add all available claims to his prior complaint. The district court concluded that the April 14, 1999, judgment in the prior § 1983 suit precluded any claims based on facts that were available to Hatch before that date. Aplt. App. at 444 ("To the extent that the complaint in this case raises federal claims by Hatch based on facts occurring *prior to the conclusion* of his previous § 1983 action, such claims are dismissed with prejudice." (emphasis added)). The question,

-15-

however, is not whether the claims raised in Hatch's new complaint are based on facts that occurred prior to the conclusion of his previous action. Instead, it is whether the new claims arose out of the same transaction as the claims in the prior action, and should therefore have been included in the prior action.

Under the transactional test, a claim should not be precluded merely because it is based on facts that arose prior to the entry of judgment in the previous action. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000) (stating in dicta "we agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed" in the previous suit.). The filing of the plaintiff's complaint frames the scope of litigation, establishing a transactional nexus into which facts and claims are fitted or excluded for purposes of claim preclusion. "New" claims, arising after the complaint has been filed, but before judgment, may be excluded from this transactional nexus, and thus be litigated in a subsequent action. As the Second Circuit has explained:

> For purposes of *res judicata*, the scope of litigation is framed by the complaint [in the prior action] at the time it is filed. The *res judicata* doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated. Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, he is not required to do so.

-16-

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (1997) (citations

and quotation omitted). *See also Mitchell*, 218 F.3d at 1202-03 (suggesting, in

dicta, that this court would follow Second Circuit's approach; and collecting

cases).[7] *See also, e.g., Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530

(6th Cir. 2006) (following majority rule that "the opportunity to file a

supplemental complaint [to allege ongoing alleged wrongdoing] is not an

obligation"); 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,

*Federal Practice & Procedure* § 4409, at 213 (2d ed. 2002) (same).

This does not mean, however, that a plaintiff can avoid supplementing his

complaint with facts *that are part of the same transaction* asserted in the

complaint, in the hope of bringing a new action arising out of the same

transaction on some later occasion. Under the transactional test, a new action will

be permitted only where it raises *new and independent* claims, not part of the

previous transaction, based on the new facts. *See Storey v. Cello Holdings, LLC*,

347 F.3d 370, 384 (2d Cir. 2003) ("Where the facts that have accumulated after

the first action *are enough on their own* to sustain the second action, the new

facts clearly constitute a new 'claim,' and the second action is not barred by

---

[7]     Hatch's lack of any obligation to supplement his complaint with new and
independent claims based on facts accruing *after* the complaint was filed should
be distinguished from his duty to supplement with claims arising from the same
transaction that *matured* (due to completion of an administrative process, for
example) after the filing of his complaint. *See Stone*, 453 F.3d at 1278-79.

*res judicata*.") (emphasis added).[8]  Thus, any claims that Hatch now asserts that are part of the same transaction asserted in his previous complaint should be precluded, while *new and independent* claims may go forward.

We further note that even if Hatch has raised a new and independent claim, this claim could still be precluded, if it falls under one of several exceptions to the rule that only claims related to the existing transaction are precluded.  Such exceptions arise, for example, where the judgment entered in the prior action (1) incorporated a settlement intended to govern future, related transactions between the parties, *see* 18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4409, at 220; (2) resolved claims for declaratory or injunctive relief dealing with conduct persisting through trial or into the future, *see id.* at 221; or where (3) "the object of the first proceeding was to establish the legality of the continuing conduct into the future," *id.* at 232; *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 288-89 (2d Cir. 2000).

### 2.  Identity with previous causes of action

---

[8]     As a leading commentator explains, "[a] subsequent action that simply alleges new facts in support of claims asserted in a prior action will usually not avoid application of the claim preclusion doctrine.  However, if such [new] facts *in themselves* establish *independent grounds* for a claim against the defendants in the previous action, claim preclusion does not apply."  *See* 18 James William Moore, *Moore's Federal Practice* § 131.22[1], at 131-55 (3d ed. 2006) (emphasis added).

Hatch's second argument, that his new causes of action are not "identical" to those previously litigated, is also governed by the transactional test. The causes of action need not be "identical" in the sense that they raise the same claims based on the same facts. All that is required is that they arise "out of the same 'transaction, or series of connected transactions' as [the] previous suit." *Yapp*, 186 F.3d at 1227. This also is a matter for the district court to resolve on remand.

### 3. Conclusion

On remand, the district court should therefore consider whether the facts on which Hatch bases his new claims are part of the same transaction as those asserted in his previous complaint, or whether they give rise independently to a new claim. If the new claim is independent, the district court should consider whether any of the above-mentioned exceptions applies to the prior judgment in favor of Hatch. If the claims are not part of the same transaction and if no exception applies, then only those claims that accrued prior to the filing of Hatch's complaint, in September 1996, should be considered precluded in the current action by the prior § 1983 suit.

### III. Application

We review the district court's application of the substantive law of claim preclusion de novo. *Wilkes v. Wyo. Dep't of Employment*, 314 F.3d 501, 503 (10th Cir. 2003). The court concluded that plaintiffs were not precluded from

bringing claims based on the factual allegations contained in paragraphs 57-61 and 66-69 of their complaint. It further concluded that plaintiffs' claims based on the remaining paragraphs of their complaint were barred by claim preclusion principles. We conclude that the following claims were precluded by the judgment reached in the prior state action, filed in July 1999:

## A. Land Use Ordinance (complaint ¶ 14-19; 22; 24-30; 49; 51; 54-61; 66)

Plaintiffs contend that defendants illegally passed an unconstitutional land use ordinance (LUO) to restrict their use and enjoyment of their properties, and enforced the ordinance in an arbitrary and capricious manner. Specifically, plaintiffs complain that the LUO, adopted May 29, 1998, designates their properties (containing existing commercial development) as residential areas, restricted to single family houses. They claim that the LUO does not permit them to obtain a conditional use permit for commercial use, does not allow any variances, and contains no provision for appeal. Finally, they assert that there is no actual, designated commercial zone in the town of Boulder to which they can relocate their businesses.

Plaintiffs also assert that the May 1998 LUO was defective (among other reasons) because it was not accompanied by a map. They complain that the Boulder Planning Commission made changes to the LUO, without proper notice to plaintiffs or to the public. They further complain that they were not permitted

to appeal to the Board of Adjustment from decisions made at two November 1998 Town Council hearings that modified the LUO. Finally, plaintiffs contend that on March 8, 2000, the Town adopted a new LUO, which states that "no actual Commercial zone physically exists," Aplt. App. at 35, and that any commercial development would require a conditional use permit. They claim that this effectively foreclosed their ability to develop their properties, because no conditional use permits are permitted in their zone for commercial use, and because non-conforming uses are no longer permitted under the LUO.

A major portion of this claim is precluded by plaintiffs' prior state court action. Plaintiffs should have raised their existing zoning issues with Boulder at the same time as they raised their complaints about the issuance of conditional use permits. Their complaint about the permits in 1999 rested on the same types of assertions of illegalities by the Town that they complain of now. The only exception appears to involve the Town's actions in March 2000, concerning the revised LUO, which could not have been raised in the prior action.

### B. General Plan Map (complaint ¶ 16-19; 22; 47)

Boulder adopted a General Plan in December 1997, using an existing use map that had been designated for official use by the Town in connection with the Plan. Plaintiffs contend that the designation of this map violated Utah statutes.

Plaintiff Mitchell complains that she attended a Boulder Planning Commission Meeting on January 22, 1998, at which she discovered that the

-21-

General Plan Map had been "colored in" showing existing commercial properties. Plaintiffs' properties, however, had not been colored in as existing "commercial" properties.

On January 28, 1998, plaintiffs made a request to purchase a copy of the General Plan Existing Use Map. Boulder responded on February 10, 1998, stating that the map would need to be copied, but that this would be difficult because it was a large map. Plaintiffs sent letters to various defendants on March 3, March 15, and May 27, 1998, concerning the map problems and the failure to renew their business licenses. These letters were not answered.

Plaintiffs state that at the February 10, 1999, Planning Commission meeting, the Commission reviewed a different map, also known as the "Boulder Town Existing Land Use Map," created by the Five County Government Association in January 1999. This map showed plaintiffs' properties as existing commercial use. The Commission, however, refused to adopt this map because the Town Council stated it was incorrect.

Plaintiffs' "General Plan Map" claims are precluded by the prior state court action. This is true for the same reasons we have stated in connection with the new LUO claims. The General Plan Map allegations could have and should have been raised at the same time as the conditional use permit claims in their prior state court action, filed in July 1999.

## C. Boulder Excavating Company (complaint ¶ 31-41; 43-46; 50; 52; 65; 67-68)

Plaintiffs complain that since September 1998, Boulder has permitted Boulder Excavating Company (BEC), a heavy construction business with buildings and a storage yard, to be located next to plaintiffs' property in the medium-density residential district, notwithstanding the Town Council's refusal to designate Mitchell's property as existing commercial on the General Plan map. Plaintiffs also complain that BEC was permitted to erect business signs, notwithstanding a lack of sign permits, and was granted a business license in November 1998, notwithstanding the lack of a conditional use permit.

On February 10, 1999, the Planning Commission granted conditional use permits to BEC. Plaintiffs assert that the Commission did not fully address their issues, and that the few limitations placed on the permit have not yet been implemented. Plaintiffs filed an appeal from the grant of the permits with the Town Clerk. They complain that the Commission permitted BEC to continue its operations even though their appeal was pending. They further contend that although they filed a government records request for the permits, they did not receive copies of the permits until after the appeal period had expired. Plaintiffs state that when they received the permits, they discovered that Boulder had waived items required by the LUO, without any discussion at the meetings, effectively sandbagging their appeal.

On June 1, 1999, Boulder mailed plaintiffs notice of a Town meeting set for the next day, at which their appeal of BEC's conditional use permit would be discussed. Plaintiffs were out of town, did not know that their appeal would be discussed, and were unable to attend the meeting. BEC's attorney was permitted to speak about the appeal, in plaintiffs' absence.

Plaintiffs were permitted to tell their side of the story at a June 17, 1999 Town meeting, at which BEC's attorney was not present. They complain, however, that copies of the LUO, the zoning map, and the General Plan existing use map were not available at the meeting. The Town Council denied plaintiffs' appeal and upheld the Planning Commission's decision to issue BEC conditional use permits.

Plaintiffs complain that on July 14, 1999, BEC filed a building permit application to construct a building to house a company backhoe and other equipment. They contend that the permit application was defective because it was not properly filled out for a commercial building, but that the Town Building Official nevertheless allowed the construction to go forward. They also complain that the building was built in a public right of way blocking the street leading to the Mitchell property.

Plaintiffs contend that the Town, knowing that their LUO had been declared unconstitutional by the Utah Supreme Court and that a new LUO was about to be passed, contacted BEC and obtained applications from them for a

-24-

wide variety of businesses, including an RV park, lodging, cabins, tent sites, a gift shop, an arcade, a swimming pool, a commercial greenhouse, and a hog farm. Plaintiffs contend that these uses are inconsistent with the General Plan and the LUO. The applications were accepted in late February 2001, and the Town passed a temporary LUO on February 28, 2001. Plaintiffs contend that the Town violated Utah law by approving these applications, when a temporary LUO is designed only to preserve the status quo.

Nearly all of this claim is precluded, because it is essentially identical to the claim plaintiffs previously litigated in state court, or because it involves allegations that could have and should have been made in the previous action. The only exception appears to be the allegations involving the July 14, 1999 permit applications and other permit applications approved in February 2001, which could not have been raised in the previous action.

### D. Remaining claims

The remaining claims contained in plaintiffs' complaint do not appear, on the record before us, to be subject to claim preclusion.[9] This is true either to the

--------------------------------------------------

[9]    These claims include, but may not be limited to, the following:

Hindrance of subdivision development (complaint ¶ 10-12);
Conveyance of adjacent cul-de-sac (complaint ¶ 62);
Denial of business license applications (complaint ¶ 12-14; 63);
Boulder business brochure (complaint ¶ 20);
Sign ordinance violations (complaint ¶ 23);

(continued...)

extent they arose after the filing of the complaint in the previous actions, or because there is not a sufficient factual nexus between those claims and the previous actions that the claims should have been brought in the prior actions. It may be, however, that the district court would conclude otherwise after careful application of the rules set forth in this opinion. It may also be true that these claims *actually* were litigated in either or both of the previous actions, thus precluding either Hatch or both plaintiffs from bringing them now. If defendants can establish this with appropriate evidence, these claims would also be precluded. Additionally, defendants may also have other defenses that the district court did not reach as to these claims, such as the statute of limitations, or plaintiffs' failure to state a claim for constitutional violations.

## IV. Analysis of non-precluded claims

The district court determined that the allegations contained in nine paragraphs of plaintiffs' complaint (paragraphs 57-61 and 66-69) were not precluded by either of the prior suits. The court granted summary judgment to the defendants on these allegations, however, finding that they were "in reality, local

---

[9](...continued)
> Complaints about obtaining town records, and hours of operation of town buildings, to the extent arising after plaintiffs' complaint in prior litigation; and
> Mitchell's exclusion from town library (complaint ¶ 42).

land disputes which are better reviewed under state law" rather than § 1983 claims.  Aplt. App. at 452.

"We review the district court's grant of summary judgment de novo, applying the same legal standard that should have been used by the district court." *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (quotation and alteration omitted).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.  Paragraphs 57 to 61

Plaintiffs contend that they attempted on many occasions, from January 1998 forward, to obtain a copy of the General Plan Map.  They claim they were finally provided a copy in February 2000.  They assert, however, that this map is flawed and inaccurate and should not be viewed as an appropriate zoning map for the LUO.  They further assert that defendants have failed to mark their properties in red on the General Plan map; that defendants clarified the LUO after claiming that it was already "clear" during the course of the prior litigation brought by plaintiffs; that Boulder has improperly classified their property as high-density residential; and that this zoning classification prohibits them from applying for

commercial conditional use permits.  They further assert that without a designated commercial zone in the town, they cannot relocate their businesses.

We agree with the district court's analysis.  These claims should be exhausted administratively and/or pursued through appropriate zoning appeals and other measures, rather than being brought initially as § 1983 claims.  Plaintiffs also failed to show that they attempted to apply for a conditional use permit.  Thus, their claims appear to be unripe and/or premature.

### B.  Paragraphs 66 through 69

In these paragraphs of their first amended complaint, plaintiffs assert that after the Utah Court of Appeals ruled that the existing LUO was illegal, Boulder passed a temporary LUO.  They assert that prior to passage of the new LUO, the Town contacted BEC and the Stouts and accepted business license applications from them for a wide variety of businesses, in order to grandfather these businesses in before the new LUO was in place.  Plaintiffs further assert that the Town subverted the purpose of a temporary LUO, which is to preserve the status quo, by issuing conditional use permits under the emergency ordinance, and by deciding that conditional use permits provided under the former LUO were still valid.

The district court found that these allegations were conclusory and did not state a claim for relief under § 1983.  When asked at his deposition whether he had any specific knowledge of Boulder's having encouraged BEC and Stout to

file the applications, Hatch admitted that he did not. Aplee. Supp. App., Vol. I at S-74 (depo. p. 140). Similarly, Mitchell denied any personal knowledge that it was Boulder that urged the Stouts to file the applications. *Id.* at S-133, 134 (depo. pp. 136-37). We agree with the district court that summary judgment was properly granted as to these claims.

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with this opinion.