278 P.2d 285

**COUNTY WATER SYSTEM, Inc., et al., Plaintiffs and Appellants,**

**v.**

**SALT LAKE CITY et al., Defendants and Respondents.**

No. 8206.

Supreme Court of Utah.

Dec. 17, 1954.

Elias Hansen, A. C. Melville, Salt Lake City, for appellants.

Christenson, Holmgren & Christofferson, City Attys., Fisher Harris, Salt Lake City, E. R. Callister, Jr., Atty. Gen., Clyde & Mecham, Lothaire R. Rich, Salt Lake City, for respondents.

CROCKETT, Justice.

The primary question here presented is whether the sale of surplus water by Salt Lake City to consumers beyond its city limits is subject to regulation by the Public Service Commission.

The plaintiff, County Water System, is a public utility furnishing water in an area just south of the Salt Lake City limits; the individual plaintiffs are taxpayers having an interest in this controversy. Plaintiffs sought a declaratory judgment alleging: that plaintiff utility is qualified, willing, has ample water and is presently engaged in supplying water to the area; that the city is presently exercising or threatening to exercise certain functions in supplying water, arranging for the con-

struction of pipelines and facilities, and contracting to sell water to residents of the area to the detriment of plaintiffs. They challenge the right of the city to so operate and contend that it should be subject to regulation by the Public Service Commission. The trial court rejected plaintiffs' contentions and entered an order dismissing the action, which order is here appealed from.

The authority of a city to engage in the business of supplying water is found in Section 10–8–14, U.C.A.1953, which provides:

"They [cities] may construct, maintain and operate water works * * * [or] electric light works * * * or authorize the construction, maintenance and operation of the same by others, or purchase or lease such works from any person or corporation, and they may *sell and deliver* the surplus product or service * * * *not required by the city or its inhabitants,* to others beyond the limits of the city." (Emphasis added.)

Plaintiffs' argument that the city is subject to jurisdiction of the Public Service Commission in the sale of surplus water is founded upon the provisions of our Public Utility Act, pertinent portions of which follow:

Section 54–2–1. "Terms Defined— Utilities subject to jurisdiction and regulation * * *.—When used in this title:

* * * * * *

"(3) The term *'corporation'* includes * * * a *municipal corporation* * * *. *'Municipal corporation'* includes *all cities,* counties or towns or other governmental units * * *.

* * * * * *

"(28) The term *'public utility'* includes every * * * *water corporation* * * * *where* the *service is performed for,* or the commodity delivered to, *the public generally.* And whenever any * * * water corporation * * * performs a service for * * * the public for which any compensation or payment whatsoever is received, such * * * water corporation * * * is hereby declared to be a public utility, subject to the jurisdiction and regulation of the commission and to the provisions of this title. * * *"

Section 54–4–1. "The commission is hereby vested with power and jurisdiction to supervise and regulate every *public utility* in this state, and to supervise all of the business of every such public utility * * * and to do all things, * * * which are necessary or convenient in the exercise of such power and jurisdiction." (Emphasis added.)

A cursory reading of the foregoing language may seem to indicate the comprehension of municipalities operating water systems within the terms of the Act. In the

case of Logan City v. Public Utilities Commission,[1] this Court considered the question whether Logan City in operating a power plant and supplying electricity to its inhabitants within the city was a "public utility" and subject to the jurisdiction of the Public Service Commission (then Public Utilities Commission). The members of the Court were not in accord as to whether Logan City in so operating was a "Public Utility," but four judges were in agreement that it was not subject to regulation by the Public Utilities Commission. The rationale by which they reached that conclusion is grounded upon Article VI, § 29 of our State Constitution:

"The legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions."

The main opinion by Mr. Justice Straup commented:

"It is hard to believe that by the Utilities Act it was intended that a municipality owning and operating its own waterworks or system * * * is required to submit to [the control of] the commission * * *. And still more difficult is it to understand that, if such a power by the Utilities Act is so delegated to the commission, why the act in such particular is not in direct conflict with the Constitution."

This thought was made emphatic and clear in a separate concurring opinion by Justice Gideon:

"The purpose of the constitutional provision quoted was to guarantee to the municipalities local self-government, and to deny to the Legislature any power to delegate to any body other than the local government the right of supervision over or interference with the property of the various municipalities within the state."

This idea also met accord in the thinking of District Judge Woolley, who sat specially with the Court for that case:

"That the people of Utah, when they adopted section 29 of article 6 of the state Constitution, intended to limit the power of the legislative branch of government, so as to prevent the delegation of the power to * * * supervise or interfere with municipal property, to any commission outside the municipal fold, and that they thereby manifest an intention, which must be respected by the courts, that municipal property shall remain under the supervision and control of * * * municipal officials, who are amenable

1. 72 Utah 536, 271 P. 961, 973.

50

to the will of the inhabitants of the municipalities * * * are propositions about the soundness of which I have no doubt."

The opinion argues, inter alia, that to permit the Public Utilities Commission to regulate the city and fix rates to be charged for services authorized by law would indirectly have the effect of permitting the Commission to control the imposition of taxes upon city residents, and held that to permit the Commission to exercise jurisdiction of the city in connection with its lawful functions would be violative of the constitutional interdiction against delegation of such powers to a special commission.[2]

Plaintiffs urge upon us that the Logan City case should be limited to its own facts, where the operation is within the municipal limits, arguing that no such immunity from regulation exists where the city engages in furnishing utilities outside its corporate. boundaries, especially where this is done in competition with other utilities. Fear of dire consequences is expressed if cities are free to furnish utilities on any basis convenient or desirable to them and

wholly uncontrolled by the Commission; whereas the utility which must compete is subject to regulation. It is suggested that erratic rate schedules may be adopted, on the one hand so high as to be extortionate; or, on the other, so low as to be insufficient to meet the costs, thus imposing tax burdens on city residents; and that unfair and discriminatory distribution, bad for the people served and unfair competition to regulated utilities, will result.

In support of their contention that the city should be held subject to the jurisdiction of the commission, plaintiffs cite cases for the proposition that when a municipality engages in the sale of utilities to users beyond its boundaries it does so in a proprietary capacity,. and is subject to the same conditions and supervision as private utilities furnishing the same services.[3] Those decisions are not directly in point with the problem which confronts us because, insofar as we have discerned, none of them deal with the constitutional question which we deem to be controlling here, with one exception, presently to be noted.

2. Id. pages 553 et seq. of 72 Utah, pages 967 et seq. of 271 P.

3. City of Olive Hill v. Public Service Comm., 305 Ky. 249, 203 S.W.2d C8; Shirk v. City of Lancaster, 313 Pa. 158, 169 A. 557, 90 A.L.R. 688; Valcour v. Village of Morrisville, 110 Vt. 93, 2 A.2d 312; City of Wheeling v. Benwood-McMechen Water Co., 115 W.Va. 353, 176

S.E. 234; Yamhill Electric Co. v. City of McMinnville et al., Or., P.U.R. 1927E, 353; Rex Moore v. Town of Evansville, Wyo., 95 P.U.R.,N.S,. 357; Town of Milwaukee v. City of Milwaukee, Wis., 87 P.U.R.,N.S., 254; In re Loveland Municipal Water Works, Colo., 83 P.U.R., N.S., 72. Also court opinions and commission decisions collected in 127 A.L.R. 94, 96.

The exception referred to is the case of City of Lamar v. Town of Wiley,[4] upon which the plaintiffs place considerable reliance. Therein the Colorado Supreme Court did refer to their constitutional provision substantially the same as our Article VI, Section 29, quoted above, and held that the municipality selling electricity beyond its limits was subject to the jurisdiction of the public utilities commission. But it is important to note that the court did not actually deal with the precise problem as to what effect should be given the constitutional provision prohibiting the delegation of control of the city's property or functions to a special commission, but decided the case on another ground. The conclusion of the court was based on the reasoning that inasmuch as nonresidents cannot vote for city officers and have no voice or control in the affairs of the city as do city dwellers, the nonresidents should have the protection of having the Public Service Commission fix reasonable rates and conditions of service, concluding:

> "When a municipality, * * * furnishes public service to its own citizens, and in connection therewith supplies its products to consumers outside of its own territorial boundaries, * * * is and should be attended with the same conditions, and be subject to the same control and supervision, that apply to a private public utility owner who furnishes like service."

Although we think the City of Lamar case is of no value as precedent here because, as indicated, it was decided on another ground, there is yet a stronger reason why it cannot be regarded as persuasive on the point here involved. In the case of City of Englewood v. City and County of Denver,[5] the Colorado Court subsequently considered the question which confronts us here. It did indicate some distinctions from the City of Lamar case on the ground that the question of whether the city was a public utility was not an issue in the Lamar case, and because it involved the furnishing of electricity, while the Englewood case was concerned with supplying water. Reference was also made to a new statute which gave the city power to fix rates for sales of water beyond its limits. We need not concern ourselves with whether there be merit in such distinctions because the conclusion reached clearly appears to be based on the constitutional provision above referred to. The court said:

> "We find, and so determine, that Denver holds such water as is not needed by it for immediate use in its proprietary capacity, in which it has a well defined property right; and section 35 of Article V of the Colorado Constitution, supra, withholds from the legislature all power to dedicate [sic] to any commissions any supervision of this property right, thus precluding any ju-

4. 80 Colo. 18, 248 P. 1009, 1010.

5. 123 Colo. 290, 229 P.2d 667, 673.

52

risdiction of the Public Utilities Commission. * * *"

which is in accord with our holding herein.

 From the point of view of the County Water System, as a competing utility, there may appear to be some merit in the apprehensions expressed as to the city being allowed to sell surplus water in its territory without regulation by the Public Service Commission. On the other hand, there are numerous considerations which make it seem quite impractical for the city to be subjected to such regulation and control, including the fact that it would be an almost impossible task, both for the city and the Commission, to analyze the city's finances with respect to construction, maintenance and operation costs of its water department, and apportion them between services rendered within and without the city limits. Furthermore, the fears expressed by plaintiffs that cities will engage in the utility business on a broad scale in competition with and destructive of regularly authorized privately owned utilities does not seem to be justified. Such activities are neither contemplated nor authorized by law; they have no authority to sell water outside the city limits except as expressly permitted by statute,[6] which is to sell the "surplus product * * not required by the city or its inhabitants."

 It must be recognized that because cities are creatures of constant growth, prudent civic planning requires the development and ownership of a water supply beyond present needs. It would be a shameful waste indeed if they were not permitted to sell the surplus and residents in adjacent areas in need of water were compelled to go without because of a hiatus in the law. The purpose of Section 10–8–14 permitting the sale of surplus water beyond the city limits was obviously to eliminate the existence of any such undesirable situation. But such permissive sale of surplus water is clearly not calculated to permit the city to purchase water solely for resale, nor to construct, own or manage facilities and equipment for the distribution of water outside of its city limits as a general business; the intent is obviously to permit it to do those things only to the extent incidental to the development and use of water for present requirements and those reasonably to be anticipated in connection with the expected growth of the city.

Another fact which would prevent cities from establishing and maintaining utility businesses on a competing basis is the temporary nature of such supply. The water must of necessity be committed to the use of the city when need arises therein. Therefore no long time assurance of continued supply to outside consumers can be given. Because of the foregoing limitations we doubt that the effect of a holding that cities are not subject to regulation

6. Section 10–8–14, Utah Code Ann., 1953.

by the Public Service Commission will be as serious or harmful as plaintiffs predict.

█ Nevertheless, whatever the considerations as to the wisdom of the city's being subject to regulation by the Public Service Commission may be, it is, perhaps fortunately, not our responsibility to here evaluate these factors and determine what is more desirable as a matter of policy. It is rather our duty to interpret what was intended by the framers of the constitution and the legislative enactments thereunder.[7]

█ It is to be kept in mind that the authority of the city to sell its surplus water beyond the city limits is derived in the same manner and from the identical section of the statute which permits it to supply its own inhabitants.[8] Such sale of surplus water, being authorized by law as a municipal function, is as much a municipal function as the supplying of water within the city limits, and disposing of the surplus outside its limits as permitted by statute does not change its character as a municipality; nor does the ownership and management of the necessary facilities beyond the city boundaries change such property to anything other than municipal property. The same arguments presented here to the effect that the city is subject to the jurisdiction of the Public

Service Commission were presented in the case of Logan City v. Public Utilities Commission, supra. This court rejected them upon the reasoning that to allow the commission to exercise jurisdiction over municipal property and the management thereof would be an unconstitutional delegation of power to a special commission forbidden by Article VI, Section 29, hereinabove discussed. The law as set out in that case has long been accepted and is firmly established as the law in this jurisdiction. We see no reason why the constitutional interdiction does not apply with equal force to the instant situation.

█ In summary, as to the issues presented for declaratory judgment we hold:

1. That Salt Lake City may acquire, develop, own, control and manage such surplus water as is incident to the present and reasonably to be anticipated future needs of the city.

2. That the city may sell and distribute such surplus beyond its corporate limits.

3. That the city may construct, own and operate such pipelines, equipment and facilities outside the city limits as are necessary for the above purpose.

4. That in performing such functions, Salt Lake City is not subject to the juris-

---

7. The limits of jurisdiction of the commission is solely a matter of constitutional and legislative intent. 12 McQuillan, Municipal Corporations (3rd Ed.) 427.

8. Section 10-8-14, U.C.A.1953, quoted in Par. 3 of this opinion.

diction or regulation of the Public Service Commission.

Each party to bear its own costs.

McDONOUGH, C. J., and HENRIOD, WADE, and WORTHEN, JJ., concur.