**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK C. HAIK and RAYMOND A. HAIK,

       Plaintiffs - Appellants,

v.

SALT LAKE CITY CORPORATION, a municipal corporation; TOWN OF ALTA, a municipal corporation; JEFFERY T. NIERMEYER, an individual; and JOHN GULDNER, an individual,

       Defendants - Appellees.

No. 13-4050
(D.C. No. 2:12-CV-00997-TS)
(D. Utah)

---

**ORDER AND JUDGMENT**∗

---

Before **KELLY**, **HOLLOWAY**∗∗ and **PHILLIPS**, Circuit Judges.

---

∗ This order and judgment is not binding precedent except under the doctrines of law of the case, claim preclusion, and issue preclusion. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

∗∗ The late Honorable William J. Holloway, United States Senior Circuit Judge, participated as a panel member when this case was heard, but passed away before final disposition. "The practice of this Court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal." *United States v. Wiles*, 106 F.3d 1516, 1516 n.* (10th Cir. 1997); *see also* 28 U.S.C. § 46(d) (noting circuit court may adopt procedures permitting disposition of an appeal where remaining quorum of panel agrees with the disposition). The remaining panel members have acted as a quorum with respect to this order and judgment.

This appeal marks just one chapter in an ongoing saga over the municipal supply of water to property owned by Mark and Raymond Haik in Alta, Utah. In 1996, the Haiks sued the Town of Alta and Salt Lake City in an attempt to force either or both municipalities to extend water service to their lots. *See Haik v. Town of Alta*, No. 97-4202, 1999 WL 190717, at *1 (10th Cir. Apr. 5, 1999) [hereinafter *Haik I*]. The Haiks lost on summary judgment and we affirmed on appeal, concluding that the Haiks lacked an affirmative right to water and that Alta and Salt Lake City had acted reasonably in refusing to supply it. *See generally id.* Now the Haiks are before us again, appealing the district court's dismissal of their newest complaint, which alleges that Salt Lake City's continuing denial of water is unlawful based on several new or newly discovered facts. The issue is whether the Haiks' new allegations state plausible claims for relief in light of the preclusive effect of *Haik I*. They do not.

## FACTS

### 1. Events Leading to *Haik I*

In 1994, the Haiks purchased four undeveloped lots in the Albion Basin Subdivision, located at the top of the Little Cottonwood Canyon, east of Salt Lake City, Utah. The Haiks wanted to develop their lots but were unable to do so because of inadequate water supply. At the time, and apparently to this day, the Board of Health requires landowners to show an entitlement to 400 gallons of water per day to receive a building permit. When the Haiks purchased their property, however, they succeeded to a right to just 50 gallons

of water per day under a preexisting contract with the Little Cottonwood Water Company. No other water rights came with the property.[1]

The Haiks nonetheless believed they were entitled to more water because their lots fell within Alta's town limits. They contacted Alta to arrange for water service, but soon learned that Alta has no independent rights to the water at issue. Instead, Alta purchases Salt Lake City's surplus water according to an intergovernmental agreement from 1976 (Water Supply Agreement). The Water Supply Agreement grants Alta a good amount of water to do with as it pleases, but it restricts Alta's ability to extend water to properties outside *then-existing* town limits without first receiving the consent of Salt Lake City. The Albion Basin Subdivision falls outside the 1976 limits, thereby necessitating Salt Lake City's pre-approval for water service. Yet when the Haiks inquired, Salt Lake City declined to consent to the extension of water service to their lots. As a result, Alta denied the relevant building permits, leaving the Haiks high and dry.

## 2. *Haik I*

The Haiks sued Alta and Salt Lake City, asserting equal-protection claims against both municipalities. They further asserted an unconstitutional "taking" claim against Alta and alleged that Salt Lake City's refusal to consent under the Water Supply Agreement violated the implied covenant of good faith and fair dealing. They also alleged that Alta

---

[1] The Utah Supreme Court also reached this conclusion in a lawsuit brought by the previous owner of the Haiks' lots seeking to compel the issuance of building permits. *See Melville v. Salt Lake Cnty.*, 570 P.2d 687, 689 (Utah 1977) ("At most plaintiffs have proved that they may have a right to 50 gallons of water per unit constructed, which does not meet the County Board of Health's requirement of 400 gallons per unit per day."). As far as we know, the preclusive effect of this judgment has never been argued.

had a municipal duty to provide water to the Albion Basin because Alta annexed the subdivision in 1981.

The district court rejected the Haiks' claims on summary judgment. The court found that Alta had no obligation to supply water to the Haiks because, even though Alta may have had the physical ability to supply water to the Albion Basin Subdivision, it lacked the *legal* ability to do so (at least unilaterally) under the Water Supply Agreement. Put another way, the only water truly "available" to Alta was that granted by Salt Lake City.

Alta's annexation of the Albion Basin did not change this reality. Even though a municipality owes a general duty to supply water under the Utah Constitution, the district court observed that this duty "presupposes that the water to be supplied to inhabitants has already been lawfully acquired by the municipality." App. at 310. In this instance, Alta had not acquired the right to supply water outside its 1976 limits absent Salt Lake City's consent. Further, the court said there was no unconstitutional taking of the Haiks' property because the Haiks still had in October of 1997 what they purchased in 1994: "lots in Albion Basin Subdivision #1 with appurtenant water rights limited to 50 gallons per day per unit." App. at 316.

The court similarly concluded that Salt Lake City's actions were justified. Nothing compelled Salt Lake City to consent to the supply of water beyond Alta's 1976 limits, and Salt Lake City had no legal duty to supply water to people outside its own city limits. Notably, the district court did not believe that the Haiks could even maintain an equal-protection claim against Salt Lake City, because the city's actions were proprietary rather than administrative.

The Haiks appealed the district court's dismissal of the equal-protection and taking claims. *Haik I*, 1999 WL 190717, at *2.

On appeal, we assumed the Haiks could maintain equal-protection claims against both Alta and Salt Lake City but emphasized that the interest in water for real-estate development is not a fundamental right. *Id.* at *3. As a result, Alta and Salt Lake City's actions were subject to rational-basis review, meaning they only needed to be "rationally related to a legitimate end." *Id.* In our view, the actions of both municipalities satisfied this standard. Alta, for one, had good reason to deny water to the Haiks since the town would have violated the Water Supply Agreement had it extended water without Salt Lake City's consent. *See id.* at *4. Salt Lake City, in turn, could refuse consent under the Water Supply Agreement given its legitimate interest in watershed preservation. *See id.*

The Haiks challenged Salt Lake City's stated preservation interest, citing examples of other people in the area who were receiving water. *See id.* At the time, it was indeed true that Salt Lake City had consented to allow water to others outside Alta's 1976 limits. *See id.* In those cases, however, Salt Lake City had allowed water for snowmaking—one of the uses listed in a 1991 city ordinance governing new watershed permits, Ordinance 17.04.020. *See id.* We believed it was rational for Salt Lake City to determine that uses listed in Ordinance 17.04.020 would not result in significant harm to the watershed, whereas other new uses outside the 1976 limits might. *Id.* As for the examples of water use *within* Alta's 1976 limits, those did not require Salt Lake City's consent and, to the extent the Haiks challenged this feature of the Water Supply Agreement itself, we saw nothing wrong with Salt Lake City's giving Alta carte blanche to supply water within the

- 5 -

1976 limits but refusing to do so beyond. *See id.* at *5. The municipalities had to draw the line somewhere in light of their purported desire to curb harmful development. *Id.*

As for the Haiks' taking claim against Alta, it failed on appeal for the same reasons announced by the district court. *See id.* at *6–7. We too believed the Haiks retained the "full 'bundle' of property rights" they had originally purchased. *See id.*

### 3. The Haiks' Current Complaint

In their current 115-page complaint, the Haiks allege several new or newly discovered facts:

*Approved Change Applications.* According to the current complaint, Salt Lake City filed over a dozen applications in the early 1990s to get approval from the State Engineer to make certain changes in water use. The Haiks base their new allegations on Change Application a16846 in particular, in which Salt Lake City sought to change the point of diversion and place of use for up to 15.75 acre-feet of water annually to serve the Albion Basin Subdivision. The Utah State Engineer approved the application in 1997 while *Haik I* was still pending. The Haiks allege this resulted in two things: (1) Salt Lake City could provide more than 400 gallons of water per day to each of the Haiks' lots; and (2) the Albion Basin Subdivision became a part of Salt Lake City's water "service area." App. at 40, ¶ 164; App. at 42–43, ¶ 175. According to the complaint, however, neither Salt Lake City nor Alta mentioned these allegedly relevant facts during *Haik I*. Instead, the Haiks say that they learned about the approved change applications in 2007 after a neighbor came upon the records.

*Second Round of Permit Denials and Niermeyer Letter.* Upon learning of the State Engineer's approval of Change Application a16846, the Haiks sought the necessary development permits for a second time. Salt Lake City and Alta authorities, including Alta Town Administrator John Guldner, denied them once again. For this, the Haiks partly blame Jeffry Niermeyer, the Director of Salt Lake City's Department of Public Utilities, who told permitting authorities that the Haiks were entitled to only 50 gallons of water per day under the Little Cottonwood contract. The Haiks claim this was a lie because, as Niermeyer knew, the Little Cottonwood contract had long been defunct. They allege that the real reason behind Niermeyer's letter was Salt Lake City's longstanding promise to Alta that city officials would use their "watershed management muscle" to help Alta stop development in the area. App. at 22, ¶ 74.

*Water Bills to the Albion Basin Subdivision.* The Haiks also allege that, since *Haik I*, they have discovered that Salt Lake City has been billing a number of homes in the Albion Basin Subdivision for water in unmetered amounts. The Haiks claim this shows that Salt Lake City is treating them differently from others within the Albion Basin Subdivision without reason.

*Salt Lake City's Approval of Water Supply to New Single-Family Residences.* The Haiks further allege that Salt Lake City has repeatedly consented to supply water to similarly situated people in the surrounding watershed canyons. Some of the Haiks' alleged examples of differential treatment predate *Haik I*, and some do not.

*Current Claims*. The Haiks seek to set aside the judgment in *Haik I* based on Salt Lake City and Alta's alleged concealment of the change applications. They also claim

that Salt Lake City and Alta misrepresented to the district court in *Haik I* that no water was available to meet the domestic requirements of the Haiks' lots. Additionally, the Haiks raise the following substantive claims: (1) violation of equal protection under 42 U.S.C. § 1983 against Salt Lake City; (2) violation of equal protection under 42 U.S.C. § 1983 against Jeffry Niermeyer (in his personal capacity); (3) violation of substantive due process under 42 U.S.C. § 1983 against Salt Lake City; (4) violation of procedural due process under 42 U.S.C. § 1983 against Salt Lake City; (5) misrepresentation against Salt Lake City, Jeffry Niermeyer, Alta, and John Guldner; and (6) civil conspiracy against Salt Lake City and Alta.

## 4. The District Court's Dismissal

After considering the Haiks' new allegations, the district court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Haik v. Salt Lake City Corp.*, No. 2:12-CV-997 TS, 2013 WL 968141, at *1 (D. Utah Mar. 12, 2013). The Haiks' attempt to set aside the judgment in *Haik I* failed because the district court found that the alleged misconduct fell short of the high standard for relief under Federal Rules of Civil Procedure 60(d)(1) and 60(d)(3). *See id.* at *7–8. As for the Haiks' newly alleged claims, the district court believed that nothing of significance had changed since *Haik I* and that the majority of the Haiks' claims had already been decided. *See id*. at *7. Alternatively, the court concluded that the Haiks' allegations were implausible. *See id*. at *8–10.

DISCUSSION

On appeal, the Haiks argue that their new and improved allegations state plausible claims for relief. We disagree. Nothing in the current complaint changes the legal landscape or position of the parties since *Haik I* or otherwise states a claim for relief. We discuss each of the Haiks' newly alleged claims in turn, leaving until last our discussion of their attempt to set aside the judgment in *Haik I*.

## 1. Standard of Review Under Rule 12(b)(6)

We review de novo the dismissal of a complaint under Rule 12(b)(6). *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). In doing so, we accept as true all well-pleaded factual allegations. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (internal quotation marks omitted). We then ask whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## 2. Preclusion

This case is unusual in that it follows a previous lawsuit involving several of the same parties, many similar allegations, and the same principal demand for relief. For this reason, we take a moment to discuss the twin doctrines of res judicata—claim preclusion and issue preclusion. "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises

the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal quotation marks omitted). The doctrines serve the defendant's interest in avoiding repeat lawsuits as well as the court's interest in avoiding a waste of judicial resources. *Arizona v. California*, 530 U.S. 392, 412 (2000). The application of res judicata is a pure question of law reviewed de novo. *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

Claim preclusion and issue preclusion are often difficult to apply in practice, and this case is no exception. The district court did not go too deep into the matter and simply concluded that the Haiks' rights and "the majority of the constitutional claims" had already been decided, without specifying which doctrine applied to what claims. App. at 280. On appeal, Appellees' arguments are similarly general. They argue that claim preclusion bars all of the current claims because the material facts have not changed since *Haik I*. From their perspective, the Haiks' claims either have been decided or should have been raised before.

While we agree that the material facts from *Haik I* are unchanged, the preclusive effect of that judgment is more complicated. Even if the material facts are the same, the Haiks may still bring a lawsuit against Alta and Salt Lake City based on entirely new facts not part of the last cause of action. *See Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006) ("[A] new action will be permitted only where it raises *new*

- 10 -

*and independent* claims, not part of the previous transaction, based on the new facts." (emphasis in original)). Though many of the Haiks' presently alleged facts are *similar* to those alleged before, we still believe at least some are new, and these new allegations are enough to make the Haiks' equal-protection and misrepresentation claims different for purposes of claim preclusion. The allegations still fail, but they fail under Rule 12(b)(6). The civil-conspiracy claim, however, is barred.

As for the Haiks' due-process claims, we think issue preclusion is the more applicable doctrine. While Appellees do not argue that issue preclusion applies on appeal, we are on notice of the issues we decided in *Haik I* and believe this is an appropriate circumstance in which to raise the doctrine sua sponte. *See Arizona*, 530 U.S. at 412 ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised."). The Haiks have briefed the applicability of res judicata generally and have argued that the issues decided in *Haik I* are not identical to the issues here.

### 3. The Due-Process Claims Against Salt Lake City Are Barred by *Haik I*

Generally, to state either a procedural or substantive due-process claim, a plaintiff must first prove that the defendant's actions deprived the plaintiff of a *protected property interest*. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 & n.2 (10th Cir. 2000). The Haiks did not raise due-process claims against Salt Lake City in *Haik I*, but they did raise a taking claim against the Town of Alta. *See Haik I*, 1999 WL 190717, at *6. In concluding that the Haiks could not maintain this claim, we reasoned that Alta's

denial of a building permit did not deprive the Haiks of anything they had before; they "retain[ed] the full bundle of property rights they purchased." *Id*. (internal quotation marks omitted). Furthermore, we said the "mere expectation of municipal water service in the future" is not "property subject to taking." *Id*. at *7. In short, the Haiks' taking claim failed "because they did not have a protectable interest in property." *Id*.

Issue preclusion "bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."[2] *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). Here, the Haiks previously suffered an adverse determination on the very issue that is now critical to their due-process claims—that is, whether the denial of the development permits deprived them of a protected property interest. True, the Haiks previously argued that *Alta* deprived them of this interest by denying the permits, whereas now they allege that *Salt Lake City* deprived them of their interest by interfering with the permitting process (by way of the Niermeyer letter). But this is a difference

---

[2] We have recognized four requirements of issue preclusion:

> (1) [T]he issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004). We discuss only the first requirement because the other three are obviously satisfied.

without a distinction. The very same question remains: Do the Haiks have any protected interest in the building permits, or, to put a finer point on it, in the water on which those permits depend? We said "no" before and are not inclined to give the Haiks a second opportunity to litigate this issue.

Nonetheless, the Haiks argue that our answer this time around should be "yes." After *Haik I*, they believe they acquired a protected property interest when the State Engineer—unbeknownst to them—approved the change applications identified in the complaint. The Haiks characterize this discovery as a change in "material operative fact." Appellants' Br. at 43. And they claim it is this new fact that gives rise to new issues not previously adjudicated. But because we disagree with the Haiks' premise, we must disagree with their conclusion as well. The change applications simply do not matter.

To begin with, we reject the notion that a protected property interest arose with the mere approval of Change Application a16846 or any other change application.[3] Under Utah law, a change application allows "a person entitled to the use of water" to seek permission to change "the point of diversion; place of use; or purpose of use for which the water was originally appropriated." Utah Code Ann. § 73-3-3(2)(a). "If an application is approved, the applicant *may* … perfect the proposed application," *id*. § 73-3-10(3)(c) (emphasis added), at which time the State Engineer issues a certificate of appropriation.

---

[3] We're not sure what the Haiks argue on this score. On the one hand, they contend that the State Engineer's approval triggered Salt Lake City's "duty to supply" water to their lots. Appellants' Br. at 32. In their complaint, however, the Haiks repeatedly allege that the approved change applications merely "authorized" Salt Lake City to supply water to the Albion Basin Subdivision. *See, e.g.*, App. at 33, ¶ 125; App. at 42–43, ¶ 175; App. at 55, ¶ 244.

- 13 -

*Id*. § 73-3-17. Nothing about this process requires the successful applicant to perfect or to use the water in the manner approved. So at most, the approved change applications "empowered" Salt Lake City to supply water to the Haiks' lots. *See Searle v. Milburn Irrigation Co.*, 133 P.3d 382, 388 (Utah 2006). But Salt Lake City already had this power in *Haik I*. As was the case then, we fail to see how the city's ability to supply water amounts to an obligation to do so—let alone a protected property interest belonging to the Haiks.

Still, the Haiks allege that approved Change Application a16846 had the particular effect in this case of bringing the Albion Basin Subdivision into Salt Lake City's service area, thereby requiring the city to extend its municipal water service to their lots. They believe that this triggered rights or interests belonging to them under Article XI, Section 6 of the Utah Constitution as well as a duty on the part of Salt Lake City "to act reasonably in making water sales . . . as a municipal function." App. at 20, ¶ 62.

Even assuming the lots are now within the city's service area, this fact doesn't entitle the Haiks to more water. To be sure, Article XI, Section 6 of the Utah Constitution mandates that a municipality supply water owned by it to its *inhabitants* at reasonable charges. *See* Utah Const. art. XI, § 6 ("[A]ll such waterworks, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges."); *Platt v. Town of Torrey*, 949 P.2d 325, 328 (Utah 1997). But Article XI, Section 6 says nothing of "others beyond the limits of the city," *see Platt*, 949 P.2d at 330 (distinguishing municipal inhabitants from nonresidents), and just because the Haiks'

- 14 -

lots now fall within Salt Lake City's service area, it does not follow that the Haiks are now Salt Lake City inhabitants as well. *See id.* at 328 (discussing a town's obligations to "*nonresident* users within its services area" (emphasis added)). Indeed, time and again, the Haiks describe themselves as nonresidents of Salt Lake City. *See, e.g.*, App. at 99–100, ¶ 498; Appellants' Br. at 49.

Consistent with the Utah Constitution, Utah courts do not impose a duty on municipalities like Salt Lake City to supply water to nonresidents like the Haiks. The Haiks actually appear to recognize as much. Again, they only allege that the city failed to exercise its discretion according to the "reasonableness requirement" articulated by the Utah Supreme Court in *County Water System v. Salt Lake City*, 278 P.2d 285 (Utah 1954), and *Platt v. Town of Torrey*. App. at 54, ¶ 237. (Complaint at ¶ 320, 498.) But we are not persuaded that even this requirement applies. *County Water System* simply held that Salt Lake City's sale of surplus water outside city limits, like its sale of water within city limits, was not subject to regulation by the Public Service Commission. 278 P.2d at 290–91. There, the court recognized that the supplying of water to nonresidents was "as much a municipal function as the supplying of water within the city limits." *Id*. at 290. *Platt*, in turn, said that *County Water System* supported the rule that "a reasonable basis must exist for the disparate treatment of residents and nonresidents," specifically when it came to differing water rates. 949 P.2d at 328, 330. But both cases were concerned with the law only *after* a municipality elected to supply water to nonresidents. Neither case requires a municipality to have a reasonable basis for refusing to supply water to nonresidents in the first place.

In fact, *County Water System* and *Platt* are consistent with what the district court said in *Haik I*—that a municipality's decision about whether to supply water to nonresidents is entirely permissive. *See Cnty. Water Sys.*, 278 P.2d at 290; *see also Platt*, 949 P.2d at 331 (citing favorably *Schroeder v. City of Grayville*, 520 N.E.2d 1032, 1034 (Ill. App. Ct. 1988) ("[A]lthough not obligated to serve non-residents in the absence of a contractual relationship, a municipality is prohibited from discriminating unreasonably in rates or manner of service when it elects to serve non-residents.")); App. at 314 ("Salt Lake City has no legal duty to furnish water to users outside its own city limits, be they 'similarly situated' or not.") Utah's statutory law reinforces this permissive approach; it "*authorizes* municipalities to construct and operate 'waterworks' . . . and to 'deliver the *surplus* product or service capacity of any such works, *not required by the city or its inhabitants*, to others beyond the limits of the city.'" *Platt*, 949 P.2d at 330 (emphases added) (quoting Utah Code Ann. § 10-8-14 (1996)). The purpose of allowing the municipal sale of excess water to people in adjacent areas is to avoid "shameful waste," *see Cnty. Water Sys.*, 287 P.2d at 290, not to force municipalities to extend their water supply to every property owner living at the top of a far-flung canyon.

Granted, we can imagine why the Haiks got their hopes up when they learned that Salt Lake City had sought out and received approval to supply water to the Albion Basin Subdivision in amounts allowing for development. In our view, however, the Haiks' hope of more water is still just that—a "mere expectation" that someone somewhere might one day supply water to their lots. *Haik I*, 1999 WL 190717, at *7. The change applications did not alter anyone's obligations and they certainly did not give the Haiks a protected

property interest or "legitimate claim of entitlement" to more water. *Hyde Park Co.*, 226 F.3d at 1210.

In sum, we see no reason to revisit our determination that the Haiks lack a constitutionally protected property interest in receiving water for their lots.[4] While affirming on this ground does not spare Salt Lake City the burdens it has already suffered in responding to this lawsuit, it does honor the preclusive effect of *Haik I*.

**4. The Equal-Protection Allegations Against Salt Lake City Fail to State a Claim**

In evaluating the sufficiency of their equal-protection allegations, the Haiks ask us to apply the two-step inquiry from *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In that case, the Supreme Court held that the Equal Protection Clause gives rise to a cause of action even if a plaintiff does not belong to a particular class or group. *See id.* To prevail, such a plaintiff must allege and prove (1) that she has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment. *Id*. Because the Haiks do not allege class membership, we

---

[4] Because the Haiks lack a protected property interest, we do not reach the separate question of whether they were afforded the appropriate level of process. *See Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) ("[C]ourts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.") Accordingly, we need not evaluate the district court's conclusions on that score and we deny the Haiks' motion asking us to take judicial notice of proceedings before the Salt Lake Valley Board of Health.

will proceed under this general framework.[5] But we proceed with caution, recognizing that class-of-one claims pose a danger of "turning even quotidian exercises of government discretion into constitutional causes." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

Of course, this is not the first time the Haiks have alleged equal-protection violations against Salt Lake City. In *Haik I*, they claimed that Salt Lake City had acted unreasonably by refusing to supply water to them while choosing to supply water to others. *See Haik I*, 1999 WL 190717, at *3–4. The Haiks argue the same thing now, but this time they say Salt Lake City *really* has no good reason to continue to treat them differently. As before, the Haiks provide examples of other people who are receiving water while they go without.

Appellees generally argue that the Haiks' equal-protection claim is barred because it is the same claim rejected on the merits in *Haik I*. We disagree. True, claim preclusion forecloses successive litigation of the "same claim." *Taylor*, 553 U.S. at 892. But claims are only the "same" for purposes of claim preclusion if they arise out of the same transaction or series of connected transactions. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999). In general, a transaction "connotes a natural grouping or common nucleus of operative facts." Restatement (Second) of Judgments § 24 cmt. b, at 199 (1982). Under the transactional test, therefore, a new claim can go forward so long as it is based on new and independent facts not part of the previous transaction. *Hatch*, 471 F.3d

---

[5] As in *Haik I*, "we assume for the purposes of this discussion only that the Haiks may maintain an equal protection claim against Salt Lake City." *Haik I*, 1999 WL 190717, at n. 2.

- 18 -

at 1150. Here, the Haiks allege that Salt Lake City is unfairly supplying water to a number of new and different people in its watershed but that Salt Lake City (through Niermeyer) sent a letter to permitting authorities in May 2011 reflecting the city's refusal to supply water to them. The Haiks also allege some comparators that predate *Haik I*, and we agree with Salt Lake City that the Haiks should have raised those examples before. Still, we think the new facts (arising subsequent to the prior action) "are enough on their own" to constitute a new claim. *Id*. (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 384 (2d Cir. 2003)). Hypothetically at least, the Haiks' new allegations could make out an equal-protection violation where none had occurred before.

But the allegations are insufficient. Again, the first thing a class-of-one plaintiff must establish is that others "similarly situated *in every material respect* were treated differently." *Kan. Penn Gaming*, 656 F.3d at 1216 (emphasis added) (internal quotation marks omitted). Depending on the case and the nature of the differential treatment, the allegations necessary to establish this level of similarity will vary. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004). The more variables involved in the government action at issue, the more specifics the plaintiff will need to allege to allow for meaningful comparison between the plaintiff's (negative) experience and the (positive) experiences of others. *See id*. at 1215. Here, the complaint fails to allege with any specificity that the new water recipients are similar to the Haiks.

The allegations of Salt Lake City's unmetered sale of water to "homes[6] in Albion Basin Subdivision" warrant separate discussion. App. at 19, ¶ 60. Certainly if the Haiks alleged that Salt Lake City was supplying water to their neighbors while denying water to them, they would be much closer to successfully alleging that Salt Lake City was treating them differently from others similarly situated. We're not sure if this is what the Haiks mean to allege since they also say that Salt Lake City treated them and several of their neighbors differently from others—*i.e.*, the city treated people in the Albion Basin Subdivision the same way. Regardless, the problem here is that the Haiks do not allege that Salt Lake City denied them the water it is evidently supplying (or at least billing) their neighbors. Instead, the allegations are that Salt Lake City (through Jeffry Niermeyer) told authorities that the Haiks were only entitled to 50 gallons of water per day under the Little Cottonwood Water contract, resulting in the denial of the Haiks' building permits. In the absence of allegations that Salt Lake City took a different approach with regard to other requests for development permits in the neighborhood, we have no way of assessing differential treatment.

To some extent, this apples-to-oranges problem carries over to the other allegations of differential treatment as well. Have the Haiks even applied for the water permits/approvals Salt Lake City has allegedly issued to the "similarly situated" comparators in the complaint?

---

[6] We question the Haiks' use of the word "homes" because there is no indication that anyone in the Albion Basin Subdivision has received the necessary permits to develop their "lots"—terminology the Haiks switch to in their brief.

In sum, the Haiks have not alleged differential treatment that states a class-of-one equal-protection claim. We have little forgiveness for this since we expressly considered several things unique about the Haiks' situation in *Haik I*—including the location of their property, their desired use, and their limited contractual rights. The current complaint does not even attempt to allege facts that might lead us to believe that the new water recipients are similar to them in any of these respects.

## 5. The Civil-Conspiracy Claim Against Salt Lake City and Alta Is Barred by *Haik I*

Appellees argue that the Haiks' civil-conspiracy claim is barred by claim preclusion. We agree. The Haiks did not raise a state-law conspiracy claim in *Haik I*, but we believe that would have been the appropriate time to do so.[7] *See Strickland v. City of Albuquerque*, 130 F.3d 1408, 1413 (10th Cir. 1997) ("[Claim preclusion] bars claims that were or could have been brought in the prior proceeding.").

The Haiks allege that Salt Lake City and Alta "combined to accomplish the objective of using denial of water as a means of controlling development within the Albion Basin Subdivision." App. at 120, ¶ 620. They describe this "policy" or "custom" of denying water service as longstanding. App. at 22–23, ¶¶ 74, 76. Indeed, the Haiks trace the denials back to the early 1990s, when Salt Lake City allegedly promised the former

---

[7] The complaint appears to allege a civil-conspiracy claim under Utah law, although the Haiks attempt to recast this claim under section 1983. Like the district court, we don't believe the complaint gives fair notice of a section 1983 conspiracy claim. Regardless, such a claim would also fail because the allegations do not set forth either a conspiracy or a constitutionally protected right. *See Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir. 1990) ("[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights . . . .").

mayor of Alta that it would deny water service to stop development in the area. They also allege that Salt Lake City and Alta's concealment of the change applications is an overt act of the conspiracy.

We return to the transactional test. Again, it provides that "a claim arising out of the same transaction, or series of connected transactions as a previous suit, which concluded in a valid and final judgment, will be precluded." *Yapp*, 186 F.3d at 1227 (internal quotation marks omitted). We normally look to the initial complaint in determining the scope of the previous litigation and the "transactional nexus into which facts and claims are fitted or excluded for purposes of claim preclusion." *Hatch*, 471 F.3d at 1150. Even though the complaint from *Haik I* is not a part of this record, we know a great deal about the first lawsuit from the decision of the district court and our own decision on appeal. Relevant here, we know the Haiks previously argued that Salt Lake City and Alta were joined in a "collusive desire to prevent any development in the upper Albion Basin." *Haik I*, 1999 WL 190717, at *2. And they claimed that Salt Lake City and Alta were working together to deny water to them for no good reason.

It's clear that there is substantial overlap between these facts and the allegations supporting the Haiks' current civil-conspiracy claim. *See* Restatement (Second) of Judgments § 24 cmt. b, at 199 (1982) ("If there is a substantial overlap, the second action should ordinarily be held precluded.") As far as we can tell, the only new allegation (apart from ongoing conspiracy) is that Alta and Salt Lake City concealed the change

applications. But this fact alone does not set forth a "new and independent" claim.[8] *Hatch*, 471 F.3d at 1150. Instead, we believe the Haiks' civil-conspiracy claim arises out of the same transaction or series of transactions as *Haik I* and could have been raised as part of the "trial unit" in that case. *Hatch*, 471 F.3d at 1146; *see Stone v. Dep't of Aviation*, 453 F.3d 1271, 1278 (10th Cir. 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common law rule of claim preclusion prohibiting the splitting of actions."). The claim was properly dismissed for this reason.

Alternatively, we affirm the district court's dismissal under Rule 12(b)(6). In *Haik I*, we found nothing suspicious or unlawful about the Water Supply Agreement or Salt Lake City and Alta's "purported objective . . . to curtail further environmentally harmful development outside Alta's 1976 town boundaries." *Haik I*, 1999 WL 190717, at *5. The same is true now, the Haiks' new allegations notwithstanding.

## 6. The Misrepresentation Allegations Against Salt Lake City, Alta, Niermeyer, and Guldner Fail to State a Claim

Fraudulent- and negligent-misrepresentation claims both require reasonable reliance on a misrepresentation of material fact. *Olsen v. Univ. of Phx.*, 244 P.3d 388, 390 (Utah Ct. App. 2010). The Haiks allege that all Appellees are liable for misrepresentation due to their alleged lies and ongoing deceit about Salt Lake City's water supply. More specifically, they allege that Appellees led them to believe that Salt Lake City had no

---

[8] "To prove a civil conspiracy, plaintiff must show the following elements: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

water and that there were no plans to service the area, when in fact both of those things were false—as shown by the approved change applications. We think these allegations are enough to give rise to a new and different claim for purposes of claim preclusion given that the Haiks didn't know about the change applications before. Still, the Haiks do not plead factual content that allows us to draw the reasonable inference that anyone is liable for misrepresentation.[9]

For one, we fail to see how a representation that Salt Lake City did not have water available to service the Albion Basin is false. The only argument the Haiks have on this score is that the approved change applications somehow gave Salt Lake City all the water it needed to service their lots. As discussed above, however, the change applications only authorized Salt Lake City to change the point of diversion and place of use of water it already had a right to use. True, the applications paved the way for Salt Lake City to supply water to the Albion Basin Subdivision. But they did not suddenly increase the amount of water available in general, nor did they make Salt Lake City's determination that there was not enough surplus water to extend to the Haiks' lots a lie. After all, Salt Lake City could decide there was no water "available" to service the Albion Basin

---

[9] "To state a claim for fraudulent misrepresentation, a plaintiff must allege (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage." *State v. Apotex Corp.*, 282 P.3d 66, 80 (Utah 2012).

Subdivision for a number of reasons, notwithstanding the city's physical or legal ability to extend service.

We also find no reason to think it misleading for anyone to represent that Salt Lake City had no plans to service the Albion Basin. From the beginning of this dispute, Alta has maintained that Salt Lake City controls water service to the Albion Basin Subdivision and Salt Lake City has maintained that it will not supply water to the Haiks' lots.[10] Both of those statements are entirely true and continue to be true to this day. That Salt Lake City now has the State Engineer's approval to supply to the Albion Basin Subdivision does not mean the city has plans to do so. Indeed, had Salt Lake City told the Haiks the opposite—that it *did* have plans to service the area—it seems that *this* would have been false. As this lawsuit proves, Salt Lake City has held firm to its longstanding representation that it will not extend water as the Haiks desire.

If the Haiks had actually relied on Salt Lake City and Alta's representations, they would not have filed suit to compel the supply of water to their lots. This is their prerogative, but they cannot claim that they filed their lawsuits in reliance on anything Salt Lake City, Alta, or any of its officials said. They filed because they believed they were entitled to more water and that Salt Lake City and Alta were wrongfully refusing it.

For these reasons, we believe the district court was correct in dismissing the Haiks' misrepresentation claims under Rule (12)(b)(6).

---

[10] Niermeyer's letter maintained this status quo. To the extent the Haiks allege that Niermeyer lied with he told permitting authorities that the Haiks had a right to 50 gallons per day under the allegedly defunct Little Cottonwood Contract, we fail to see how this suggested *overstatement* of the Haiks' rights might support their misrepresentation claim.

## 7.  Relief from Judgment in *Haik I*

The Haiks believe that their new allegations not only state claims for relief but that they are also enough to set aside the judgment in *Haik I*. They allege that Salt Lake City and Alta committed fraud on the court by concealing the change applications and by dishonestly answering the district court's questions about water availability and plans for the Albion Basin Subdivision.[11] These allegations do not come close to the level of intentional fraud or gross injustice required to set aside a previous judgment.

Federal Rule of Civil Procedure 60 governs relief from final judgments and "does not limit a court's power to entertain an independent action to relieve a party from a judgment" or to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d). Parties seeking relief from a judgment through an independent action can do so only to "prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). It is a "narrow avenue" for equitable relief, *United States v. Buck*, 281 F.3d 1336, 1341 (10th Cir. 2002), and can only be based on recognized grounds, such as fraud. *Winfield Assocs., Inc. v. Stonecipher*, 429 F.2d 1087, 1090 (10th Cir. 1970). Similarly, a judgment can be set aside for "fraud on the court" only in cases of "the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated." *Buck*, 281 F.3d at 1342 (quoting

---

[11] At one point in the complaint, the Haiks also allege that Salt Lake City failed to disclose its unmetered water sales to the Albion Basin Subdivision. To the extent this allegation is part of their claim for relief under Rule 60, we reject the significance of this alleged nondisclosure as well. As discussed, these water sales do not carry any weight in the equal-protection context, and they do not indicate that Salt Lake City had a duty to supply water to the Haiks in the amounts they desire.

*Weese v. Schukman*, 98 F.3d 542, 552–53 (10th Cir.1996). We review the district court's denial of relief on the ground of fraud upon the court for abuse of discretion. *Id*.

We have held that "nondisclosure to the court of facts allegedly pertinent to the matter before it[ ] will not ordinarily rise to the level of fraud on the court." *Id*. The nondisclosure of the change applications is no exception. While the district court may have been curious about water availability and any plans for the area, the change applications were only marginally relevant to this inquiry at best. As we've stated, the change applications did not require Salt Lake City to supply water to the Haiks, nor did they necessarily reveal Salt Lake City's plans for the area. So, even if Salt Lake City's lawyer knew about the approved change applications, we hardly think he lied when he told the district court in *Haik I* that he thought it "would be very difficult for [the city] to ever consider" extending water service to the Albion Basin.[12] App. at 13, ¶ 28.

More importantly, the disclosure of the change applications would not have influenced the result in *Haik I*. Like the district court, we determined that Alta and Salt Lake City could reasonably refuse water to the Haiks and that, at most, the Haiks could only claim a right to 50 gallons of water per day. *Haik I*, 1999 WL 190717, at *1, *4. The parties agree that the approval of Change Application a16846 authorized Salt Lake City to use more water in the Albion Basin Subdivision. But we never assumed that Salt Lake

---

[12] We think it's entirely possible that the lawyer simply did not recall Change Application a16846. According to the complaint, it was filed about five years before the hearing at issue, along with a dozen other change applications.

City lacked this authority before.[13] We just said that no one was required to extend water service to the Haiks' lots. Despite the Haiks' arguments to the contrary, this simple fact remains true today.

In sum, this case is a far cry from those involving the kind of gross injustice that "demand[s] a departure from rigid adherence to the doctrine of res judicata." *Beggerly*, 524 U.S. at 46 (internal quotation marks omitted). We find no abuse of discretion.

## CONCLUSION

After reviewing the Haiks' complaint and the exhibits attached to it, we conclude that none of their claims survives dismissal. Three of the five claims are precluded by *Haik I*, and the allegations are otherwise insufficient to state a claim under *Twombly* and *Iqbal*. We also conclude that the district court did not abuse its discretion in denying the Haiks' relief from our previous judgment. We therefore affirm.

The Haiks' motion to certify is denied.

ENTERED FOR THE COURT

Gregory A. Phillips
Circuit Judge

---

[13] The district court in *Haik I* did not assume this either, but the Haiks cite the following statement from the court's order in suggesting otherwise: "The general duty imposed upon municipalities by Article XI, § 6 of the Utah Constitution . . . presupposes that the water to be supplied to inhabitants has already been lawfully acquired by the municipality." App. at 310 n.13. The district court made this comment in discussing *Alta's* municipal obligations, not Salt Lake City's. Of course, the approved change applications do not require Alta to supply water to the Haiks either.